1  MAX H. STERN (SBN 154424)
   WILLIAM S. BERMAN (SBN 170857)
2  **DUANE MORRIS LLP**
   One Market, Spear Tower, Suite 2000
3  San Francisco, CA 94105-1104
   Telephone: 415.957.3000
4  Facsimile: 415.957.3001
   email: MHStern@duanemorris.com
5  email: WSBerman@duanemorris.com

6  Attorneys for Plaintiff
   UNIVERSAL UNDERWRITERS INSURANCE
7  COMPANY, a Kansas corporation

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  UNIVERSAL UNDERWRITERS INSURANCE          Case No.:  C 07 2858 - SC
    COMPANY, a Kansas corporation,
12                                            **MEMORANDUM OF POINTS AND**
                      Plaintiff,              **AUTHORITIES IN SUPPORT OF**
13                                            **UNIVERSAL UNDERWRITERS'**
              v.                              **MOTION FOR PARTIAL SUMMARY**
14                                            **JUDGMENT**
    WALNUT CREEK ASSOCIATES 5, INC. dba
15  OAKLAND ACURA, a California corporation;   Complaint Filed:    June 1, 2007
    PROFORMANCE ASSOCIATES, INC., a
16  California corporation; and JAMES NIELSEN, an   Date:      April 25, 2008
    individual, WALNUT CREEK ASSOCIATES 2,   Time:      8:30 a.m.
17  INC., a California corporation; WALNUT CREEK   Courtroom:  1, 17th Floor
    ASSOCIATES 2, INC. dba Walnut Creek Honda, a   Judge:  The Honorable Samuel Conti
18  California corporation, Phillip Peterson, an
    individual, GORDON WALTON, an individual
19
                    Defendants.
20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................................. 1

II.   UNDISPUTED FACTUAL BACKGROUND ................................................. 2

    A.    The Underlying Action ........................................................................ 2

    B.    Universal Is Defending The Underlying Action .................................. 6

    C.    Present Action ...................................................................................... 6

    D.    The Universal Policies ......................................................................... 7

III.  STANDARD GOVERNING SUMMARY JUDGMENT ................................ 9

IV.   GOVERNING LEGAL PRINCIPLES .......................................................... 11

    A.    Insurance Contract Interpretation Principles ..................................... 11

        1.    Insurance Interpretation Is A Question Of Law, Based
            Solely On The Contract ........................................................... 11

        2.    Policy Wording Must Be Interpreted In Context Of
            The Policies As A Whole ......................................................... 11

        3.    Policy Wording Cannot Be Interpreted In A Way That
            Makes Any Words Or Phrases Meaningless Or Redundant ..... 12

        4.    Policy Provisions Are Only Considered Ambiguous If
            They Are Susceptible To More Than One Reasonable Construction ....... 12

        5.    A Layperson's Understanding Of A Term May Be
            Determined From Common Usage Dictionary .......................... 13

    B.    The Duty To Defend ........................................................................... 13

    C.    When Indemnity Is Owed ................................................................... 14

V.    LEGAL ARGUMENT .................................................................................... 14

    A.    Partial Summary Judgment Should Be Granted On Claims One and Two,
        Because Universal Did Not Insure Liability For Stealing Customer
        Information .......................................................................................... 14

        1.    The Taking Of The Customer Information Does Not Falls Within Injury
            Group 3 .................................................................................... 15

            a.    The Plain Meaning Of "Personal Property" .................. 15

            b.    Considering The Policy Wording As A Whole, Injury Group 3
               Does Not Apply To Intangible Customer Information ............... 167

B.    The Complaint Fails To Allege Facts That Give Rise To a Duty To Defend Under the Policy's Injury Group 1-2, 4-6..............................................................18

    1.    Injury Group 4 Does Not Apply ................................................18

    2.    Injury Group 1 Does Not Apply ................................................22

    3.    Injury Groups 2, 5 and 6 Do Not Apply ....................................23

C.    Universal Has No Obligation To Provide Independent Counsel, So Universal Is Entitled To Partial Summary Judgment On Its Third Claim For Relief............23

VI.    CONCLUSION ..........................................................................................27

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNIVERSAL UNDERWRITERS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Aerojet-General Corp. v. Transport Indemnity Co.,*
   17 Cal. 4th 38, 70 Cal. Rptr. 2d 118 (1997) ................................................14

*Allstate Insurance Co. v. Madan,*
   889 F. Supp. 374 (C.D.Cal.1995) ...........................................................9

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).............................10

*Bank of the West v. Superior Court,*
   2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538 (1992) ................................11-13, 18

*Bay Cities Paving & Grading v. Lawyers' Mutual Insurance Co.,*
   5 Cal. 4th 854, 21 Cal. Rptr. 2d 691 (1993) .............................................12-13

*Blanchard v. State Farm Fire & Casualty Co.,*
   2 Cal. App. 4th 345, 2 Cal. Rptr. 2d 884 (Ct.App. 2nd Dist. Div. 5 1991)................25

*Buss v. Superior Court,*
   16 Cal. 4th 35, 65 Cal. Rptr. 2d 366 (1997) .....................................14, 23-24

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)............................9, 10

*Continental Casualty Co. v. City of Richmond,*
   763 F.3d 1076 (9th Cir. 1985) ...............................................................11

*Cooper Cos. v. Transcontinental Insurance Co.,*
   31 Cal. App. 4th 1094, 37 Cal. Rptr. 2d 508 (1995) ..................................13

*Crane v. State Farm Fire & Casualty Co.,*
   5 Cal. 3d 112, 95 Cal. Rptr. 513 (1971) ...............................................16

*Dynamic Concepts, Inc. v. Truck Insurance Exch.,*
   61 Cal. App. 4th 999, 71 Cal. Rptr. 2d 882 (Ct.App.4th Dist. Div. 3 1998)...............25

*FMC Corp. v. Plaisted & Cos.,*
   61 Cal. App. 4th 1132, 72 Cal. Rptr. 2d 467 (Ct.App. 6th Dist. 1998).......................14

*First National Bank v. Cities Serv. Co.,*
   391 U.S. 253, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968)................................10

*Foster Gardner, Inc. v. National Union Fire Insurance Co.,*
   18 Cal. 4th 857, 77 Cal. Rptr. 2d 107 (1998) ......................................12, 14

*France Stone Co., Inc. v. Charter Township of Monroe,* 790 F. Supp. 707
   (E.D.Mich.1992)...............................................................................9

*Giddings v. Industrial Indemnity Company,*
   112 Cal. App. 3d 213, 169 Cal. Rptr. 278 (1980) .....................................22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNIVERSAL UNDERWRITERS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

*Hameid v. National Fire Insurance of Hartford,*
    31 Cal. 4th 16, 1 Cal.Rptr.3d 401 (2003) .......................................................19-22

*Humboldt Bank v. Gulf Insurance Co.,*
    323 F. Supp. 2d 1027 (N.D. Cal. 2004).......................................................11-13, 15

*Kazi v. State Farm Fire & Casualty Co.,*
    24 Cal. 4th 871, 103 Cal. Rptr. 2d 1 (2001) .................................................13

*MacKinnon v. Truck Insurance Exch.,*
    31 Cal. 4th 635, 3 Cal.Rptr.3d 228 (2003) .................................................11

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).........................10-11

*Microtec Research, Inc. v. Nationwide Mutual Insurance Company*, 40 F.3d 968 (9th
    Cir. 1994)....................................................................................................19

*Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 24 Cal. Rptr. 2d 467
    (1993)..........................................................................................................14

*Mora v. Chemical-Tronics*, 16 F. Supp. 2d 1192 (S.D.Cal.1998).......................10

*Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 66 Cal. Rptr. 2d 731 (Ct.App. 1st Dist.
    Div. 2 1997).................................................................................................16

*Nationwide Mutual Insurance Company v. Dynasty Solar, Inc.,*
    753 F. Supp. 853 (N.D. Cal. 1990)............................................................11-13, 15

*New York Life Insurance Co. v. Hollender,*
    38 Cal. 2d 73, 237 P.2d 510 (1951)............................................................17

*Owens v. Local No. 169, Associate of Western Pulp and Paper Workers,*
    971 F.2d 347 (9th Cir.1992) ......................................................................10

*Palmer v. Truck Insurance Exch.,*
    21 Cal. 4th 1109, 90 Cal. Rptr. 2d 647 (1999) .........................................11

*Pico Citizens Bank v. Tafco, Inc.,*
    165 Cal. App. 2d 739, 332 P.2d 739 (Ct.App. 2nd Dist. Div. 3 1958).........12

*Producers Dairy Delivery Co. v. Sentry Insurance Co.,*
    41 Cal. 3d 903, 226 Cal. Rptr. 558 (1986) ................................................12

*Rombe Corporation v. Allied Insurance Company,*
    128 Cal. App. 4th 482, 27 Cal.Rptr.3d 99 (Ct.App. 4th Dist. Div. 1 2005)........20

*San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc.,*
    162 Cal. App. 3d 358, 208 Cal. Rptr. 494 (Ct.App. 4th Dist. Div. 1 1984)..........23-24

*Select Design, Ltd v. Union Mutual Fire Insurance,*
    674 A.2d 798 (Vt. 1996)..............................................................................19-20

*Sentex Systems, Inc. v. Hartford Accident & Indemnity Company,*
  93 F.3d 578 (9th Cir. 1996) ................................................................20-21

*Simply Fresh Fruit, Inc. v. Continental Insurance Company,*
  94 F.3d 1219 (9th Cir. 1996) .....................................................................19

*Stamm Theatres, Inc. v. Hartford Casualty Insurance Co.,*
  93 Cal. App. 4th 531, 113 Cal. Rptr. 2d 300
  (Ct.App. Dist. 1st Dist. Div. 3 2001) .........................................................16

*State Farm Fire and Casualty Company v. Steinberg et al.,*
  393 F.3d 1226 (11th Cir. 2004) ............................................................20-21

*Titan Corp. v. Aetna Casualty and Surety Co.,*
  22 Cal. App. 4th 457, 27 Cal. Rptr. 2d 476
  (Ct.App. 4th Dist. Div. 1 1994) .......................................................12, 17-18

*Union Oil Co. v. International Insurance Co.,*
  37 Cal. App. 4th 930, 44 Cal. Rptr. 2d 4
  (Ct.App. 1st Dist. Div. 3 1995)........................................................12, 17-18

*Waller v. Truck Insurance Exch.,*
  11 Cal. 4th 1, 44 Cal. Rptr. 2d 370 (1995) ...........................................13-14

*We Do Graphics, Inc. v. Mercury Casualty Company,*
  124 Cal. App. 4th 131, 21 Cal.Rptr.3d 9 (Ct.App. 4th Dist. Div. 3 2004)............21-22

## STATUTES

Cal. Bus. & Prof. Code § 17200 .......................................................................4
Cal. Civ. Code § 1641 ............................................................................12, 17-18
Cal. Civ. Code § 1654 ...................................................................................18
Cal. Civ. Code § 2860 ............................................................................2, 23-26
Cal. Civ. Code § 3422 .....................................................................................4
Cal. Civ. Code § 3426 ....................................................................................16
Cal. Code of Civ. Proc. § 526 ...........................................................................4
Cal. Penal Code § 496(c) ..............................................................................4-5
Cal. Penal Code § 502(e) ..............................................................................4-5

## OTHER ANNOTATIONS

Fed.R.Civ.P. 56(a) .....................................................................................9-10
Fed.R.Civ.P. 56(c) .....................................................................................9-10
Fed.R.Civ.P. 56(e) ........................................................................................10

*Merriam-Webster's Collegiate Dictionary*, 11th Ed., 2004 .......................................15-16
*The American Heritage Dictionary of the English Language*, 4th Ed. 2006 ....................15

1 | I.      **INTRODUCTION**

2      Plaintiff Universal Underwriters Insurance Company ("Universal") brings this motion

3 | for partial summary judgment to establish the first two claims for declaratory relief in its complaint:

4 | in essence, Universal has no obligation to defend or indemnify its insureds (the defendants here)

5 | with respect to the intellectual property claims in the underlying *Berkeley Honda* action. Universal

6 | also seeks partial summary judgment on its third claim for declaratory relief that it is not obligated to

7 | pay for independent counsel for most of the Defendants in the Underlying Action

8      In the underlying action, the claimant auto dealership alleges that defendants

9 | (automobile dealerships and their personnel) conspired to hire away its service manager (defendant

10 | James Nielsen), who took a copy of claimant's customer information list and his work cell phone

11 | with him. Universal agrees there is coverage for the alleged taking of the cell phone, which could be

12 | a covered invasion of possession of personal property. But, Universal does not agree that the

13 | coverage for invasion of possession of personal property extends to misuse of intellectual property,

14 | such as a customer list. Not only is the common understanding of "personal property" limited

15 | to actual and movable things, but particularly in the context of Universal's policies -- which

16 | separately provide coverage for misappropriating certain kinds of intellectual property – it is not

17 | reasonable to interpret Universal's coverage for invasion of possession of personal property to extend

18 | generally to all intellectual property claims.

19      Perhaps recognizing that their argument for coverage of customer-list-related liability

20 | is not reasonable in the context of the policy, Defendants also contend that such liability is covered

21 | because the paper list printed and taken was an actual item, that there was a loss of use of tangible

22 | property, or that it was a misappropriation of advertising idea or style. These arguments are

23 | unfounded. Defendants' potential liability for the alleged obtaining and use of the customer list

24 | information arises from the intellectual property (not the paper it was on), and California Supreme

25 | Court and subsequent precedent establishes that the type of use of a customer list alleged here is not

26 | advertising for purposes of liability insurance coverage.

27      As a matter of law, the Universal policies do not cover Defendants' customer-list-

28 | related liability as alleged in the underlying action, and so Universal is entitled to partial summary

1 judgment in favor its First and Second Claims for Relief and a declaration that it did not have at any

2 time and now has no duty to defend or indemnify the Defendants against such liability.

3 In addition, Universal is entitled to partial summary judgment on its Third Claim for

4 Relief that it has no obligation to provide independent counsel to the Defendants (other than Mr.

5 Nielsen). Pursuant to California Civil Code section 2860, this right only exists for certain types of

6 conflicts of interest between the insurer and insured. Universal has denied indemnity as to all

7 claims, except for the alleged taking of actual personal property, not intellectual property, and for

8 that claim coverage has been accepted. Section 2860(b) provides that "a conflict of interest does not

9 exist as to allegations or facts in the litigation for which the insurer denies coverage." Universal is

10 entitled to a declaration that it did not have at any time and now has no obligation to provide

11 independent counsel to the Defendants.

12 **II.    UNDISPUTED FACTUAL BACKGROUND**

13 **A.    The Underlying Action**

14 Berkeley Auto Group, LLC dba Berkeley Honda ("Berkeley Honda") filed its

15 Complaint against Walnut Creek Associates 5, Inc. dba Oakland Acura ("Oakland Acura"),

16 Proformance Associates, Inc., and Mr. Nielsen on or about November 10, 2005, in the Superior

17 Court of California in and for the County of Contra Costa, case number C 05-02372. Berkeley

18 Honda filed its First Amended Complaint several weeks later, on or about November 29, 2005.

19 (Request for Judicial Notice ("RJN") at ¶ 1 - Exhibit A.) On February 10, 2006, Berkeley Honda

20 filed an Amendment to the Complaint that added Doe Defendants, including Walnut Creek

21 Associates 2, Inc., Walnut Creek Associates 2, Inc. dba Walnut Creek Honda, Phillip Peterson and

22 Gordon Walton. (RJN at ¶ 2 - Exhibit B.) On September 14, 2007, the Second Amended Complaint

23 was filed, and on January 22, 2008 against all Defendants. (RJN at ¶ 3 – Exhibit C.) When the

24 Third Amended Complaint was filed on January 22, 2008, Defendants Walnut Creek Associates 2,

25 Inc., Walnut Creek Associates 2, Inc. dba Walnut Creek Honda, and Proformance Associates had

26 been dropped from the Underlying Action, because they had obtained favorable trial court rulings

27 with respect to the claims against them. (RJN at ¶ 4 - Exhibit D.) The Third Amended Complaint

28 states causes of action against Mr. Nielsen, Walnut Creek Associates 5, Inc., Walnut Creek

1  Associates 5, Inc. dba Oakland Acura, Phillip Peterson and Gordon Walton ("Complaint"). (RJN at

2  ¶ 4 - Exhibit D.)

3          James Nielsen is the former service manager and staff coordinator of Berkeley

4  Honda. (RJN at ¶¶ 1, 3,  4 – Exhibits A, C and D at ¶ 3.)  During Mr. Nielsen's employment with

5  Berkeley Honda, Mr. Nielsen handled information technology for Berkeley Honda. (RJN at ¶¶ 1, 3,

6  4 – Exhibits A, C and D at ¶ 4.)  Because of Mr. Nielsen's position and responsibilities, Mr. Nielsen

7  had access to password-protected computer systems, which maintained Berkeley Honda's customer

8  information, which consists of tens of thousands of customers, and personal customer information,

9  including financial information and service records. (RJN at ¶¶ 1, 3, 4 – Exhibits A, C, and D at ¶¶

10  4, 23.)

11          Mr. Nielsen voluntarily left his employment Berkeley Honda on or about August 31,

12  2005, and then began worked for Oakland Acura. (RJN at ¶¶ 1, 3,  4 – Exhibits A, C and D at ¶¶ 5,

13  24.)  Mr. Nielsen allegedly took Berkeley Honda's customer information with him to Oakland

14  Acura. (RJN at ¶¶ 1, 3, 4 – Exhibits A, C and D at ¶¶ 5-6, 25.)  In addition, Mr. Nielsen allegedly

15  took a mobile telephone and phone number belonging to Berkeley Honda and used it while

16  employed by Oakland Acura. (RJN at ¶¶ 1, 3, 4 – Exhibits A, C and D at ¶ 6.)

17          Using the customer information, customers and former customers of Berkeley Honda

18  allegedly were solicited by Oakland Acura and Mr. Nielsen through a targeted direct mail piece sent

19  via the U.S. Mail. (RJN at ¶¶ 1, 3, 4 – Exhibits A, C and D at ¶¶ 7, 26-28.)  When the mailing was

20  sent to Berkeley Honda's present and former customers, the mailing allegedly included the phone

21  number for the mobile phone that formerly was used by Mr. Nielsen while employed at Berkeley

22  Honda. (RJN at ¶¶ 1, 3, 4 – Exhibits A, C and D at ¶ 29.)  The mailer states:

23          "I am now Service Manager at Oakland Acura.

24          If you are looking for your old friend, Jim Nielsen, formerly at
           Berkeley Honda, I moved on to a new job joining my friend Phil
25          Peterson's great team at Oakland Acura.

26          Acura you say ... don't panic.  Our factory-trained technicians service
           and repair Honda's too.  This is a beautiful facility offering may
           amenities like, continental breakfast, free shuttles, Acura loaner
27          vehicles, complimentary car way vouchers, and Saturday services.....

28          Jim Nielsen, (510) 812-7474."

1    (RJN at ¶¶ 1, 3, 4 – Exhibits A, C and D at 28.)

2          Berkeley Honda's Complaint contains thirteen causes of action, including causes of

3 action for: (1) Misappropriation of Trade Secrets; (2) Unfair Competition in Violation of Business &

4 Professions Code section 17200; (3) Intentional Interference with Prospective Economic Advantage:

5 (4) Conversion; (5) Trespass; (6) Accounting; (7) Breach of Confidence; (8) Unjust Enrichment; (9)

6 Injunction under Civil Code Section 3422 and Code of Civil Procedure Section 526; and (10)

7 Negligent Supervision; (11) Violation of Penal Code Section 496(c); (12) Violation of Penal Code

8 Section 502(e); and (13) Civil Conspiracy.

9          In the First Cause of Action for Misappropriation of Trade Secrets, it is alleged that

10 the defendants used Berkeley Honda's customer database without authorization, and because they

11 had misappropriated the information on Berkeley Honda's customer information, they were liable

12 under California Civil Code section 3426.1 and/or other statutes or common law. (RJN at ¶ 4 -

13 Exhibit D at pp. 8-9.)

14          The Second Cause of Action is for Unfair Competition in Violation of California

15 Business & Professions Code section 17200 et seq. in which Berkeley Honda seeks disgorgement of

16 any profits the defendants have received as a result of their wrongful conduct, and to enjoin the

17 defendants from using, disposing or wasting any monies obtained by way of the alleged wrongful

18 conduct. (RJN at ¶ 4 - Exhibit D at pp. 10-11.)

19          The Third Cause of Action is for Intentional Interference With Prospective Economic

20 Advantage based on the interference and disruption of Berkeley Honda's relationships with its

21 customers and the resulting economic benefit that Berkeley Honda expected to obtain as a result of

22 the use, misappropriation and disclosing of Berkeley Honda's customer lists. (RJN at ¶ 4 - Exhibit

23 D at pp. 11-12.)

24          The Fourth Cause of Action for Conversion and the Fifth Cause of Action is for

25 Trespass are premised on Mr. Nielsen's taking of the customer information and the subsequent use

26 of that customer information. (RJN at ¶ 4 - Exhibit D at pp. 12-13.)

27          The Fifth Cause of Action is for Trespass for the taking of and interference with the

28 customer information. (RJN at ¶ 4 - Exhibit D at pp. 13-14.)

1    The Sixth Cause of Action is for Accounting of income and profits from the use of

2 Berkeley Honda's customer information.  (RJN at ¶ 4 - Exhibit D at p. 14.)

3    The Seventh Cause of Action is for Breach of Confidence against Mr. Nielsen for

4 taking of the customer information and disclosing it to Oakland Acura.  (RJN at ¶ 4 - Exhibit D at

5 pp. 14-15.)

6    The Eighth Cause of Action is for Unjust Enrichment flowing from the use of the

7 customer information for which restitution and disgorgement are sought.  (RJN at ¶ 4 - Exhibit D at

8 pp. 15-16.)

9    The Ninth Cause of Action is for an Injunction Under California Civil Code 526 to

10 restrain: (1) continued misappropriation of Berkeley Honda's Confidential Information; (2)

11 continued use of Berkeley Honda's phone number as their own thereby usurping business

12 opportunities belonging to Berkeley Honda; (3) further soliciting of Berkeley Honda's customers;

13 (4) continued unjustly profiting from the Confidential Information; (5) potentially violating the

14 privacy of Berkeley Honda's customers.  (RJN at ¶ 4 - Exhibit D at pp. 16-17.)

15    The Tenth Cause of Action is for Negligent Supervision for the failure to return the

16 customer information, the failure to exercise reasonable care in the application, hiring, supervision,

17 conduct and review of its employees, and failure to safeguard against the misappropriation of

18 Berkeley Honda's customer information. (RJN at ¶ 4 - Exhibit D at pp. 17-19.)

19    The Eleventh Cause of Action is for Violation of Penal Code Section 496(c) for the

20 stealing of the customer information and making advantageous use of the same.  (RJN at ¶ 4 -

21 Exhibit D at p. 19.)

22    The Twelfth Cause of Action is for Violation of Penal Code Section 502(e) for

23 willfully and knowingly accessing Berkeley Honda's computer system, networks and databases

24 without permission and to steal and copy the customer information.  (RJN at ¶ 4 - Exhibit D at p.

25 20.)

26    The Thirteenth Cause of Action is for Civil Conspiracy for knowingly and willfully

27 entering into an agreement to obtain and convert the customer list.  (RJN at ¶ 4 - Exhibit D at pp. 21-

28 22.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNIVERSAL UNDERWRITERS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Relief sought in the Complaint by Berkeley Honda includes: (1) compensatory

2   damages; (2) punitive damages; (3) imposition of a constructive trust on all revenue, profits, gains

3   and compensation or advantage from the alleged misconduct; (4) an accounting; (5) pre-judgment

4   interest; (6) an injunctive relief; (7) costs of suit, including attorney's fees; and (8) other relief that

5   the court may deem appropriate.  (RJN at ¶ 4 - Exhibit D at pp. 22-23.)

6   **B.     Universal Is Defending The Underlying Action**

7   Universal presently is defending each of the defendants against the claims made

8   against them by Berkeley Honda in the *Berkeley Honda* action.  (Declaration of Mark D. Fischer in

9   Support of Universal's Motion for Summary Judgment ("Fischer Decl.") at ¶¶ 2-6 - Exhibits A-E.)

10  Universal has acknowledged coverage for the alleged taking of the cell phone, while denying

11  indemnity for the alleged conducts associated with Berkeley Honda's intellectual property.  In

12  addition, Universal presently is advancing fees for independent counsel demanded by the defendants,

13  subject to a reservation of rights.  (Declaration of Max H. Stern in Support of Universal's Motion for

14  Summary Adjudication ("Stern Decl.") at ¶ 4 - Exhibit B.)  To date, Universal has advanced

15  $15,940.80 as independent counsel fees for the defendants other than Mr. Nielsen.  (Fischer Decl. at

16  ¶ 12.)

17  **C.     Present Action**

18  Universal filed this action on June 1, 2007.  (Stern Decl. at ¶ 2.)  Universal asserts

19  five claims for relief, including: (1) declaratory relief that Universal has no indemnity obligation, as

20  matter of law, except for the alleged taking actual personal property, not intellectual property; (2)

21  declaratory relief that Universal has no duty to defend as matter of law, except for the alleged taking

22  actual personal property, not intellectual property; (3) declaratory relief that Universal has no

23  obligation to provide independent counsel; (4) restitution/reimbursement for amounts Universal has

24  advanced for defense costs; and (5) declaratory relief that Universal has no indemnity obligation,

25  except for the alleged taking actual personal property, not intellectual property, based on potential

26  mixed issues of fact and law.  (Stern Decl. at ¶3 - Exhibit A.)

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNIVERSAL UNDERWRITERS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

### D.    The Universal Policies

Universal issued to Oakland Acura Policy No. 261712, which was in effect from October 1, 2004 to October 1, 2005 ("Policy No. 261712"), and Policy No. 261712, which was in effect from October 1, 2005 to October 1, 2006 (for convenience referred to as "Policy No. 261712A"). (Fischer Decl. at ¶¶ 7-8 - Exhibits F-G.)

Universal issued to Walnut Creek Honda  Policy No. 261711, which was in effect from October 1, 2004 to October 1, 2005 ("Policy No. 261711"), and Policy No. 261711A, which was in effect from October 1, 2005 to October 1, 2006 ("Policy No. 261711A"). (Fischer Decl. at ¶¶ 9-10 - Exhibits H and I, respectively.)

The policy provisions at issue in Policy Nos. 261712 and 261712A (the "Oakland Acura Policies") (Fischer Decl. at ¶¶ 7-8 - Exhibits F-G) and Policy Nos. 261711 and 261711A (the "Walnut Creek Honda Policies") (Fischer Decl. at ¶¶ 9-10 - Exhibits H-I) are identical with respect to the primary liability insurance provided by Garage Coverage Part 500.  Collectively, the Oakland Acura Policies and the Walnut Creek Honda Policies are referred to herein as "the Policies." (Fischer Decl. at ¶¶ 7-10 - Exhibits F and I, respectively.)

The part of the Policies relevant to coverage for the underlying complaint identified below is the Garage Coverage Part 500.  The first, fourth and fifth paragraphs of the Insuring Agreement of the Universal Underwriters Garage Coverage Part 500 of the Policies define Universal's relevant duty to defend and indemnity obligation as follows:

> WE will pay all sums the INSURED legally pays as DAMAGES (including punitive DAMAGES where insurable by law) because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.
>
> * * *
>
> WE have no right or duty to defend SUITS for DAMAGES not covered by or declared for this Coverage Part.
>
> WE have the right and duty to defend any SUIT asking for these DAMAGES.  WE may investigate and settle any claim or SUIT WE consider appropriate.  OUR payment of the limit shown in the declarations ends OUR duty to defend.

(Fischer Decl. at ¶¶ 7-10 - Exhibits F at 0053; G at 0054; H at 0055; and I at 0056.)

The Garage Coverage Part 500 of the Policies, as amended by Endorsement No. 162,

defines "DAMAGES" and "SUIT" as follows:

> "DAMAGES" means amounts awardable by a court of law. With respect to INJURY Group 6, DAMAGES also means amounts awardable by administrative agencies, back pay awards, front pay awards, compensatory damages, and, where insurable by law, punitive damages, prejudgment interest, post-judgment interest, and settlements.
>
> DAMAGES does not mean:
>
> 1.  civil penalties, fines, assessments or equitable remedies except those listed above; or
>
> 2.  severance pay or DAMAGES under an express written contract of employment or an express written obligation to make payments in the event of the termination of employment.
>
> * * *
>
> "SUIT" means a civil action for DAMAGES, including arbitration or mediation or any other alternative dispute resolution proceedings to which the INSURED must submit or submits with OUR consent. A class action is one SUIT. SUIT does not mean administrative actions (except under INJURY Group 6 and EMPLOYMENT RELATED DEFENSE) or equitable actions.

(Fischer Decl. at ¶¶ 7-10 - Exhibits F at 00132-33; G at 0133-34; H at 0134-35; and I at 0135-36.)

The "INJURY" coverage, set forth in the first paragraph of the Insuring Agreement of

the Garage Coverage Part 500 of the Policies, as amended by Endorsements Nos. 162 and 410,

provides coverage for certain types of injury only. The Policies define such "INJURY" as follows:

> Group 1 – bodily injury, sickness, disease or disability (including death resulting from any of these) or damage to or loss of use of tangible property;
>
> Group 2 – mental anguish, mental injury, fright, shock, or humiliation except when arising from DISCRIMINATION
>
> Group 3 – false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, abuse of process, libel, slander defamation of character, private nuisance (except pollution), invasion of the right of possession of personal property, common law claims for invasion of the right of privacy;
>
> Group 4 – plagiarism, misappropriation of advertising ideas or style, infringement of copyright, title, slogan or trademark;
>
> Group 5 – any error or omission in the ADMINISTRATION of YOUR profit sharing, pension or employee stock subscription plans or YOUR group life, group hospitalization or major medical, group accident and

health, Worker's Compensation, unemployment, social security or disability benefits insurance; . . .

Group 6 – DISCRIMINATION or WRONGFUL EMPLOYMENT PRACTICES.

(Fischer Decl. at ¶¶ 7-10 - Exhibits F at 0054, 0132, 0175; G at 0055, 0133, 0177; H at 0056, 0134, 0180; and I at 0057, 0135, 0182.)   In relevant part, Group 1 includes property damage, Group 3 including "invasion of the right of possession of personal property," and Group 4 includes "misappropriation of advertising ideas or style" and both copyright and trademark infringement.

The Insuring Agreement of Universal Garage Coverage Part 500, as amended by Endorsement No. 162, of the Policies defines "OCCURRENCE" as follows:

"OCCURRENCE," with respect to COVERED POLLUTION DAMAGES, INJURY Groups 1 and 2 means an accident, including continuous or repeated exposure to conditions, which results in such INJURY or COVERED POLLUTION DAMAGES during the Coverage Part period neither intended nor expected from the standpoint of a reasonably prudent person.

With respect to INJURY Groups (3), (4), (5), and (6), OCCURRENCE means acts of the INSURED during the Coverage Part period which result in such INJURY.

(Fischer Decl. at ¶¶ 7-10 - Exhibits F at 0055, 0132; G at 0056, 0133; H at 0057, 0134; and I at 0058, 0135.)

## III.    STANDARD GOVERNING SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Rule 56 also allows a court to grant partial summary judgment on part of a claim or defense. *See* Fed.R.Civ.P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); see also *Allstate Ins. Co. v. Madan,* 889 F.Supp. 374, 378-79 (C.D.Cal.1995); *France Stone Co., Inc. v. Charter Township of*

1   *Monroe,* 790 F.Supp. 707, 710 (E.D.Mich.1992). The standard that applies to a motion for partial

2   summary judgment is the same as that which applies to a motion for summary judgment. *See*

3   Fed.R.Civ.P. 56(a), 56(c); *Mora v. Chem-Tronics,* 16 F.Supp.2d 1192, 1200 (S.D.Cal.1998).

4         Under summary judgment practice, the moving party bears the initial responsibility of

5   informing the district court of the basis for its motion, and identifying those portions of 'the

6   pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits,

7   if any,' which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*

8   *v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548 (quoting Rule 56(c)).

9         If the moving party meets its initial responsibility, the burden then shifts to the

10   opposing party to establish that a genuine issue as to any material fact actually does exist.

11   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89

12   L.Ed.2d 538 (1986); *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20

13   L.Ed.2d 569 (1968).

14         In attempting to establish the existence of this factual dispute, the opposing party

15   must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material,

16   in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e). The opposing party must

17   demonstrate that the fact in contention is material, *i.e.,* a fact that might affect the outcome of the suit

18   under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable

19   jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

20   248, 251- 52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Owens v. Local No. 169, Assoc. of Western*

21   *Pulp and Paper Workers*, 971 F.2d 347, 355 (9th Cir.1992). Stated another way, "before the

22   evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally

23   no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for

24   the party producing it, upon whom the onus of proof is imposed." *Anderson*, 477 U.S. at 251, 106

25   S.Ct. 2505 (*quoting Schuylkill and Dauphin Improvement Co. v. Munson*, 81 U.S. 442, 14 Wall. 442,

26   448, 20 L.Ed. 867 (1872)). As the Supreme Court explained, "[w]hen the moving party has carried

27   its burden under Rule 56(c), its opponent must do more that simply show that there is some

28   metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a

1  rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

2  *Matsushita*, 475 U.S. at 586-87, 106 S.Ct. 1348.

3  **IV.    GOVERNING LEGAL PRINCIPLES**

4      **A.    Insurance Contract Interpretation Principles**

5          Because this action was brought pursuant to this Court's diversity jurisdiction, with

6  respect to insurance issued for California liabilities, California substantive law applies to this case.

7  See *Continental Cas. Co. v. City of Richmond,* 763 F.3d 1076, 1079 (9th Cir. 1985).

8          **1.    Insurance Interpretation Is A Question Of Law, Based Solely On The
9                  Contract**

10          As the California Supreme Court stated succinctly in *Palmer v. Truck Ins. Exch.,* 21

11  Cal.4th 1109, 90 Cal.Rptr.2d 647 (1999):

12          Interpretation of an insurance policy is a question of law.   While
            insurance contracts have special features, they are still contracts to
13          which the ordinary rules of contractual interpretation apply.  Thus, the
            mutual intention of the parties at the time the contract is formed
14          governs interpretation.  If possible, we infer this intent solely from the
            written provisions of the insurance policy.

15  21 Cal.4th at 1115 (quote marks and citations omitted); see also *MacKinnon v. Truck Ins. Exch.,* 31

16  Cal.4th 635, 647, 3 Cal.Rptr.3d 228 (2003); *Bank of the West v. Superior Court,* 2 Cal.4th 1254,

17  1264, 10 Cal.Rptr.2d 538 (1992).

18          As this Court expressed in *Nationwide Mutual Insurance Company v. Dynasty Solar,*

19  *Inc.,* 753 F.Supp. 853 (N.D. Cal. 1990):

20          Where, as here, the interpretation of a writing is at the heart of a
21          dispute, the question traditionally is one of law for the court to decide.

22  *Nationwide Mutual Insurance Company,* 753 F.Supp. at 855; see also *Humboldt Bank v. Gulf Ins.*

23  *Co.,* 323 F.Supp.2d 1027, 1032 (N.D. Cal. 2004) ("This case turns on the purely legal question of the

24  proper application of the Policy to the facts of this case.  Therefore, summary judgment is the

25  appropriate vehicle to resolve this dispute").

26          **2.    Policy Wording Must Be Interpreted In Context Of The Policies As A
27                  Whole**

28          Words in an insurance contract must be interpreted in the context of all the language

11                                                  CASE NO. C-07-2858 SC

1  in the policy, and all the circumstances in which the contract was formed. The wording in a contract

2  must be construed in the context of that instrument as a whole, and in the circumstances of that case,

3  and cannot be found to be ambiguous in the abstract. *Humboldt Bank,* 323 F.Supp.2d at 1032;

4  *Nationwide Mutual Ins. Co. v. Dynasty Solar, Inc.,* 753 F.Supp. 853, 856 (N.D. Cal. 1990); *Foster*

5  *Gardner, Inc. v. National Union Fire Ins. Co.,* 18 Cal.4th 857, 868, 77 Cal.Rptr.2d 107 (1998);

6  *Bank of the West,* 2 Cal.4th at 1265; *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903,

7  916 n.7, 226 Cal.Rptr. 558 (1986).

### 3.    Policy Wording Cannot Be Interpreted In A Way That Makes Any Words Or Phrases Meaningless Or Redundant

California law requires that contracts must be interpreted in a manner that gives

meaning to every part. Civil Code section 1641 states:

> "The whole of a contract is to be taken together, so as to give effect to
> every part, if reasonably practicable, each clause helping to interpret
> the other."

Thus, each word and clause in a contract must be given independent meaning, where

possible, so that no word or clause is made redundant or superfluous. *Union Oil Co. v. International*

*Ins. Co.,* 37 Cal.App.4th 930, 940, 44 Cal.Rptr.2d 4 (Ct.App. 1st Dist. Div. 3 1995); *Titan Corp. v.*

*Aetna Cas. and Sur. Co.,* 22 Cal.App.4th 457, 474, 27 Cal.Rptr.2d 476 (Ct.App. 4th Dist. Div. 1

1994*); Pico Citizens Bank v. Tafco, Inc.,* 165 Cal.App.2d 739, 746, 332 P.2d 739 (Ct.App. 2nd Dist.

Div. 3 1958); see also *Humboldt Bank,* 323 F.Supp.2d at 1032.

### 4.    Policy Provisions Are Only Considered Ambiguous If They Are Susceptible To More Than One Reasonable Construction

A policy provision is considered ambiguous only if it is susceptible to more than one

reasonable construction. See *Foster-Gardner,* 18 Cal.4th at 868 ("A policy provision will be

considered ambiguous when it is capable of two or more constructions, both of which are

reasonable."); see also *Bay Cities Paving & Grading v. Lawyers' Mutual Ins. Co.,* 5 Cal. 4th 854,

867, 21 Cal.Rptr.2d 691 (1993). Moreover, "a finding of ambiguity in policy language cannot be

based on an unreasonable misunderstanding on the part of the insured." *Id.* at 913.

Importantly, abstract arguments regarding the meaning of a phrase – taken out of the

context of other wording in the policy – cannot create an ambiguity. In *Bank of the West,* the court

12                                    CASE NO. C-07-2858 SC

rejected the insured's proffered meaning of the words "unfair competition," noting that the insured's argument addressed those words in isolation, not in context of the surrounding policy language. *Bank of the West,* 2 Cal.4th 1254, 1265. Addressing the insured's argument, the court stated: "While the foregoing argument is probably correct as a matter of abstract philology, it is defective as a matter of policy interpretation because it disregards the context." *Id.* at 1265.

Rather, the court should apply the rules of construction to determine whether "as a matter of common sense," an objectively reasonable insured could read the policy to expect the coverage claimed. *Id.* at 1276. If the interpretation offered to support coverage is not objectively reasonable in the context of the policy as a whole and the claim, then there is no ambiguity and no coverage, because "there cannot be an ambiguity per se, i.e., ambiguity unrelated to an application." *Bay Cities Paving & Grading, Inc.,* 5 Cal.4th at 867. See also *Cooper Cos. v. Transcontinental Ins. Co.,* 31 Cal.App.4th 1094, 1102, 37 Cal.Rptr.2d 508 (1995) (quoting same).

### 5.   A Layperson's Understanding Of A Term May Be Determined From Common Usage Dictionary

This court stated in *Humboldt Bank v. Gulf Insurance Company*:

> Merely because a word or term is not specifically defined does not mean we strictly construe it against the insurer. [Citation omitted] Rather, the meaning of words . . . is always subordinate to the meaning derived from the context , or from the circumstances under which the word is used. [Citation omitted.]  Therefore, whereas a reliance on [the] common understanding is bedrock, equally important are the requirements of reasonableness and context. [Citation omitted.]

*Humboldt,* 323 F.Supp.2d at 1032.

Thus, "[i]t is well settled that in order to construe words in an insurance policy in their 'ordinary and popular sense,' a court may resort to a dictionary." *Humboldt,* 323 F.Supp.2d at 1032; see also *Nationwide Mutual Ins. Co.,* 753 F.Supp. at 856. Unless a word is defined in its technical sense or has special meaning agreed by the parties, policy wording is to be interpreted in its ordinary and popular sense. *Humboldt,* 323 F.Supp.2d at 1032.

### B.   The Duty To Defend

"Courts first determine whether insurers have a duty to defend by 'comparing the allegations of the complaint with the terms of the policy.'" *Kazi v. State Farm Fire & Cas. Co.,* 24 Cal.4th 871, 879, 103 Cal.Rptr.2d 1 (2001) (quoting *Waller v. Truck Ins. Exch.,* 11 Cal.4th 1, 19, 44

Cal.Rptr.2d 370 (1995)).

A liability insurer is free to limit the types of proceedings it will defend. *Foster-Gardner,* 18 Cal.App.4th at pp. 878, 882. The insurer may define what proceedings will be defended, and in fact may draft a policy to provide no duty to defend at all. *FMC Corp. v. Plaisted & Cos.,* 61 Cal.App.4th 1132, 1200, 72 Cal.Rptr.2d 467 (Ct.App. 6th Dist. 1998). Thus, the court must consider whether the insurance policy provides for a defense and whether the underlying action is within the scope of the defense obligation provided by the policy.

If there is a defense obligation that applies to the underlying action, the court must determine whether there is any potential that the allegations of the complaint will result in liability covered by the policy. An insurance company has a duty to defend a lawsuit against its insured if there is a potential for coverage. The insured need only show the underlying claims may fall within the policy coverage. *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467 (1993). When there is no potential for coverage, there is no duty to defend. *Buss v. Superior Court,* 16 Cal.4th 35, 47, 65 Cal.Rptr.2d 366 (1997).

**C.    When Indemnity Is Owed**

The California Supreme Court has explained that to establish an insurer's duty to indemnify a claim, the insured must prove all facts necessary to show that the specific liabilities for which the insured seeks coverage are actually within the scope of coverage of the policy including, if applicable, that its liability is for an "accident" or "occurrence" within the scope of coverage. *Waller,* 11 Cal.4th 1, 19; see also *Aerojet-General Corp. v. Transport Indemnity Co.,* 17 Cal. 4th 38, 64, 70 Cal.Rptr.2d 118 (1997) 64; *FMC,* 61 Cal.App.4th at 1158.

**V.    LEGAL ARGUMENT**

**A.    Partial Summary Judgment Should Be Granted On Claims One and Two, Because Universal Did Not Insure Liability For Stealing Customer Information**

Under the Injury coverage provided by the Policy, Universal agreed to provide indemnity to an INSURED for DAMAGES paid because of any of six defined categories of INJURY caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD, and Universal agreed to provide a defense for a SUIT asking for such DAMAGES. The

14

1  enumerated "INJURY" offenses as defined by the Policy, generally, relate to bodily injury or

2  property damage (Group 1), mental anguish (Group 2), personal injury (Group 3), advertising injury

3  (Group 4), improper benefits administration (Group 5), and discrimination/wrongful termination

4  (Group 6). (See Fischer Decl. at ¶¶ 7-10 - Exhibits F at 0054, 0132, 0175; G at 0055, 0133, 0177; H

5  at 0056, 0134, 0180; and I at 0057, 0135, 0182.)   As discussed below, there is no potential for

6  coverage for taking customer information under any of the six categories.

7
                    1.    **The Taking Of The Customer Information Does Not Falls Within Injury**
8                         **Group 3**

9              Injury Group 3 of the Policy includes the offense of "invasion of the right of

10  possession of personal property." (Fischer Decl. at ¶¶ 7-10 - Exhibits F at 0175; G at 0177; H at

11  0180; and I at 0182.)   The Complaint alleges that Mr. Nielsen took and used confidential

12  information, including customer information of Berkeley Honda, and that Mr. Nielsen "converted

13  Berkeley Honda's telephone equipment and telephone number known to be a Berkeley Honda

14  telephone number to the benefit of Defendants and each of them." (RJN at ¶ 4 - Exhibit D at ¶¶ 6,

15  56.) Defendants contend that the alleged taking or copying of purported trade secret intellectual

16  property customer information constitutes personal property. As discussed below, that alleged

17  taking of intellectual property is not "personal property" and otherwise does not fall within the scope

18  of "invasion of the right of possession of personal property."

19              a.    **The Plain Meaning Of "Personal Property"**

20              The term "personal property" is not d in the policy.  Courts often use dictionary

21  definition to assist in determining meaning to undefined words. *Humboldt*, 323 F.Supp.2d at 1032;

22  see also *Nationwide Mutual Ins. Co.*, 753 F.Supp. at 856. "Personal property" is defined by the

23  leading popular dictionaries as "property other than real property consisting of things temporary or

24  movable: CHATTELS." Merriam-Webster's Collegiate Dictionary, 11th Ed., 2004 at 924 (Stern

25  Decl. at ¶ 5 - Exhibit C at 0004); see also The American Heritage Dictionary of the English

26  Language, 4th Ed. 2006, ("temporary or moveable property"). (Stern Decl. at ¶ 6 – Exhibit D at

27  0003.) Chattel means "an item of tangible movable or immovable property except real estate and

28  things (as building) connected with real property." Merriam-Webster's Collegiate Dictionary, 11th

1  Ed., 2004 at 210. (Stern Decl. at ¶ 5 - Exhibit C at 0003).  The plain and ordinary meaning of

2  "personal property" as used in the Policy is something tangible that may be moveable or immovable.

3          In the Underlying Action, Berkeley Honda alleges its customer information was taken

4  and used.  There is no allegation in what form or how that information was taken, but it alleged that

5  customers of Berkeley Honda were sent a single, U.S. Mail solicitation concerning services available

6  at Oakland Acura.  Customer information, such as customer addresses and service history, is not

7  something that is tangible and capable of being picked up and taken.  While that information may be

8  reflected in something tangible such as paper, such paper does not represent the interest of value.

9  California courts have concluded that a customer list is a form of intangible, intellectual property and

10  subject to protection as a trade secret under Uniform Trade Secret Act, which California has

11  adopted.  See Cal. Civ. Code § 3426, *et seq.  Morlife, Inc. v. Perry*, 56 Cal.App.4[th] 1514, 1521-1523,

12  66 Cal.Rptr.2d 731 (Ct.App. 1st Dist. Div. 2 1997).

13          Universal is aware that other definitions of "personal property" may be located in

14  other sources, but technical or legalistic meanings or interpretations may not be used to change the

15  meaning that is plain in context.  See e.g., *Crane v. State Farm Fire & Cas. Co.,* 5 Cal.3d 112, 115,

16  95 Cal.Rptr. 513 (1971) ("The policy should be read as a lay[person] would read it and not as it

17  might be analyzed by an attorney or insurance expert.").  Instead, when ordinary people do not

18  understand the meaning of a word, they turn to a dictionary.  See e.g., *Stamm Theatres, Inc. v.*

19  *Hartford Cas. Ins. Co.,* 93 Cal.App.4[th] 531, 543, 113 Cal.Rptr.2d 300 (Ct.App. Dist. 1st Dist. Div. 3

20  2001).  The only objective, reasonable interpretation of the scope of the offense "invasion of the

21  right of possession of personal property" is that it relates to acts that prevent the possession of

22  tangible personal property.  Because customer information constitutes an intangible personal

23  property interest (as opposed to real property or personal property), the taking and use of that

24  information does not fall with the scope of the Injury Group 3 offense of "invasion of the right of

25  possession of personal property."

26  ///

27  ///

28  ///

b.     **Considering The Policy Wording As A Whole, Injury Group 3 Does Not Apply To Intangible Customer Information**

While the Defendants have argued that Injury Group 3 applies to the alleged taking of Berkeley Honda's intangible intellectual property, Defendants' construction is unreasonable because it is contrary to the reading the wording of Injury Group 3 in the context of the entire Policy, and in the context of Injury Group 4 in particular.

Injury Group 4 sets forth the coverage for the taking of certain intangible intellectual property: "plagiarism, misappropriation of advertising ideas or style, infringement of copyright, title, slogan or trademark." If Defendants' interpretation – that Injury Group 3 coverage for personal property liability extended to taking intellectual property – were correct, then coverage for the intellectual property offenses in Injury Group 4 would be unnecessary and merely surplusage.

Civil Code section 1641 precludes the result argued by Defendants. This section provides that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Under Section 1641, if one party's interpretation gives effect to each term in the insurance contract, and the other party's interpretation renders any words in the contract meaningless or redundant, courts adopt the meaning that gives effect to all the words in the policy. *Union Oil Co.,* 37 Cal.App.4th at 935 ("an interpretation that gives effect to every clause is preferred over one that would render other policy terms meaningless," citing *New York Life Ins. Co. v. Hollender*, 38 Cal.2d 73, 81-82, 237 P.2d 510 (1951); see also *Titan Corp.,* 22 Cal.App.4th at 474 ("Importantly, we should interpret contractual language in a manner which gives force and effect to every clause rather than to one which renders clauses nugatory.").

Section 1641 thus compels rejection of the argument that Injury Group 3 applies to taking of intangible intellectual property. Only Universal's interpretation of the policies gives independent meaning to all the policy terms. The position advocated by the Defendants would result in Injury Groups 3 and 4 covering the same intellectual property offenses, which is not a reasonable interpretation. By contrast, Universal's interpretation of the policies gives meaning to all words in the Policies, specifically Injury Groups 3 and 4, without rendering the identification of the

17                              CASE NO. C-07-2858 SC

intellectual property offenses by Injury Group 4 as mere surplusage. Because Universal's interpretation gives effect to all words in the policy, and an interpretation that interference with the right of possession of personal property extended to misappropriation of intellectual property would make these terms in Group 4 redundant, the rules of contract interpretation require adopting Universal's construction. Civil Code section 1641; *Union Oil,* 37 Cal.App.4th at 935, 940; *Titan,* 22 Cal.App.4th at 474.

Finally, the Defendants cannot create an ambiguity by reliance on the rule of construction that contracts may be construed against the drafter. First, this rule only applies in cases of ambiguity, and this policy language is not ambiguous, because there are not two objectively reasonable interpretations. Second, this so-called rule of contra proferentem ("against the one who proffers") is found in Civil Code section 1654, which provides: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." As Section 1654 states, this is a rule of last resort, which is used only where a dispute is not resolved by the prior rules of contract interpretation. Even if the policy wording were ambiguous (which it is not), the rule of contra proferentem would never be reached here, because the Defendants' position as to the scope of coverage of Injury Group 3 is defeated by the prior rule of construction stated in Civil Code section 1641, which requires that each term in the contracts must be given meaning. See *Bank of the West,* 2 Cal. 4th at 1264-1265 (rejecting an insured's effort to apply contra proferentem "too early in the interpretive process").

**B.      The Complaint Fails To Allege Facts That Give Rise To a Duty To Defend Under the Policy's Injury Group 1-2, 4-6.**

Injury Groups 1, 2, 4, 5 and 6 are not implicated, as none of the defined enumerated offenses for these Injury Groups have been alleged.

**1.      Injury Group 4 Does Not Apply**

The offenses covered under Injury Group 4 are similar, but more limited, than those found in advertising injury coverage in commercial general liability policies: the Injury Group 4 specifically is limited to the following offenses: "plagiarism, misappropriation of advertising ideas

1    or style, infringement of copyright, title, slogan or trademark." Precedent from California and

2    precedent from other jurisdictions demonstrate that Defendants are incorrect as a matter of law in

3    contending that the alleged taking of Berkeley Honda's confidential customer information and using

4    it to send one direct mail advertising solicitation in an effort to gain customers at Oakland Acura

5    falls within the offense of "misappropriation of advertising ideas or style."

6            Recent California Supreme Court precedent and subsequent appellate court decisions

7    have rejected insureds' arguments that a defense obligation is owed for theft of trade secret customer

8    information under similar "advertising injury" coverage provided in commercial liability policies.

9    See *Hameid v. National Fire Insurance of Hartford,* 31 Cal.4th 16, 1 Cal.Rptr.3d 401 (2003); *Simply*

10   *Fresh Fruit, Inc. v. Continental Insurance Company*, 94 F.3d 1219, 1222 (9th Cir. 1996) (no duty to

11   defend, because alleged misappropriation did not arise in the course of advertising activities);

12   *Microtec Research, Inc. v. Nationwide Mutual Insurance Company*, 40 F.3d 968, 971 (9th Cir. 1994)

13   (insurer did not have a duty to defend against claims the insured had misappropriated others

14   computer codes, because the harm was caused by the alleged misappropriation of the codes, not by

15   advertising) .

16           In *Hameid v. National Fire Insurance of Hartford,* the California Supreme Court held

17   that "advertising" as used in liability policies means "widespread promotional activities usually

18   directed to the public at large," which "reflects the commonly understood meaning of the word." *Id.*

19   at 24.  In reaching its conclusion, the California Supreme Court examined out of state authorities

20   interpreting the term "advertising," as well as decisions of some California courts, and concluded

21   that individual solicitations (which in *Hameid* involved mailers sent to customers and telephone calls

22   to customers) are not advertising, but are mere solicitations.  *Id.* at 27, 29-30.

23           In deciding *Hameid,* among the cases relied on by the California Supreme Court was

24   the Vermont Supreme Court decision in *Select Design, Ltd v. Union Mutual Fire Insurance,* 674

25   A.2d 798 (Vt. 1996).  At issue in *Select Design* was whether a defense obligation was owed for the

26   insured's alleged use of a competitor's proprietary information, including a customer information,

27   that was provided by a competitor's former employee, and used to solicit the competitor's

28   customers.  The Vermont Supreme Court held that with respect to Select Design's general liability

                                                    19                    CASE NO. C-07-2858 SC

1  policy's "advertising injury" coverage, as the majority of courts have determined, "advertising"

2  refers to "widespread distribution of promotional materials to the public at large." *Id.* at 801-803.

3  The Vermont Supreme Court reasoned that if customer solicitations were considered advertising,

4  then basically any act of contacting a potential customer would be considered advertising under the

5  policy. *Id.* at 803.  Consequently, the court determined that the solicitation of a competitor's

6  customers did not constitute "advertising" under the insured's liability policy. *Id.* at 802.

7          Building on California Supreme Court's decision in *Hameid*, California's Fourth

8  District Court of Appeal, in *Rombe Corporation v. Allied Insurance Company*, 128 Cal.App.4[th] 482,

9  27 Cal.Rptr.3d 99 (Ct.App. 4th Dist. Div. 1 2005), held that bringing customers together for a

10  breakfast meeting to announce that an employee was leaving the company and starting a new

11  company, followed by a report of the meeting appearing in a electronic newsletter, did not fall within

12  the scope of a general liability insurer's definition of "advertisement" under a general liability's

13  insurer's "advertising injury" coverage, which defined "advertisement" as "a notice that is broadcast

14  or published to the general public or specific market segments about your goods, products or

15  services for the purpose of attracting customers or supporters." *Id.* at 486, 492-493.

16          Following *Hameid*, the court concluded that the "specific market segments" wording

17  was meant to relieve the insured from having to demonstrate the advertising was widely made to

18  general public, and thereby affording coverage for advertisements to defined markets such as

19  "medical professionals, racing car enthusiasts or horse breeders." *Rombe Corporation,* 128

20  Cal.App.4[th] at 492.  The appellate court observed, in its refusal to give a broad reading to "specific

21  market segments" that would extend to a group of individual business contacts (such as those invited

22  to the breakfast meeting), then arguably "advertisement" could include any kind of business

23  communication and "could easily include the one-on-one solicitations which the court in *Hameid*

24  found outside the scope of advertising." *Id.* at 492.

25          The most on-point post-*Hameid* case addressing customer information is the decision

26  of the U.S. Court of Appeals for the Eleventh Circuit in *State Farm Fire and Casualty Company v.*

27  *Steinberg et al.,* 393 F.3d 1226 (11th Cir. 2004) (Florida law).  In that action, the Eleventh Circuit

28  concluded that the theft of a customer information is not considered the "misappropriation of

                                        20                    CASE NO. C-07-2858 SC

1    advertising ideas or style of doing business." *Id.* at 1232-1234. The Court acknowledged that the

2    Ninth Circuit in *Sentex Systems, Inc. v. Hartford Accident & Indemnity Company,* 93 F.3d 578 (9th

3    Cir. 1996) recognized the trial court's conclusion that an insurer had a duty to defend its insured

4    against allegations that it misappropriated "trade secrets, including customer lists, marketing

5    techniques, and other inside and confidential information," in addition to soliciting the underlying

6    plaintiffs customers. *State Farm,* 393 F.3d at 1233. However, the Eleventh Circuit pointed out that

7    the *Sentex* court expressly stated that the misappropriation of a customer information did not

8    constitute a covered 'advertising injury" offense:

> While the Sentex court held that "misappropriation of advertising
> ideas" was broad enough to reach the allegations of the complaint in
> the underlying action at issue before it, the court expressly stated it did
> not consider misappropriation of a customer list a covered offense
> alone. "We do not necessarily agree with the district court's broader
> conclusion, however, that allegations of misappropriation of customer
> lists . . . can alone trigger coverage."

13   *Id.* at 1233 (citing *Sentex,* 93 F.3d at 581).

14         The *Sentex* decision also is distinguishable for an additional reason not mentioned by

15   the Eleventh Circuit. *Sentex* was decided years before *Hameid* was decided by the California

16   Supreme Court, and under *Hameid*, the *Sentex* determination that there was advertising would not

17   survive, because *Sentex* is contrary to now existing California law: one-on-one solicitations, which

18   the court addressed in *Sentex*, are not advertising, because they do not constitute widespread

19   promotional activities directed to public at large. *Hameid,* 31 Cal.4[th] at 24. Thus, while a customer

20   list may be a trade secret, it is not an idea about advertising, nor is it an "outward expression of a

21   business style." *State Farm,* 393 F.3d at 1234. Without allegations of advertising, the Eleventh

22   Circuit held that the alleged misappropriation of a customer list is not the misappropriation of an

23   "advertising idea" or "style of doing business." *Id*.

24         In *We Do Graphics, Inc. v. Mercury Casualty Company,* 124 Cal.App.4th 131, 21

25   Cal.Rptr.3d 9 (Ct.App. 4th Dist. Div. 3 2004), another post-*Hameid* court addressed whether a

26   liability insurer had a duty to defend claims against its insured for alleged theft of computer files and

27   data, including customer lists, that alleged involved trade secrets. The appellate court held that no

28   advertising activities were alleged in the underlying complaint, and because the trade secrets taken

1 were "specific customer information, not advertising ideas", the insurer was not obligated to defend

2 under its advertising injury coverage part. (*Id.* at 138.)

3        In the context of the Policy's Injury Group 4 coverage, which also includes the

4 offenses of "infringement of copyright, title, slogan or trademark," the alleged theft and use of

5 Berkeley Honda's customer information for a single mail solicitation is not advertising under the

6 California Supreme Court's decision in *Hameid,* where the conduct of a single mailing and a

7 telephone call to solicit prospective customers was found not to involve "widespread promotional

8 activities usually directed to the public at large." *Hameid,* 31 Cal.4th at 24.  In addition, the alleged

9 taking and using of the customer information is not an "advertising idea or style."  It is merely, as

10 alleged, customer information.  There is no allegation in the Underlying Action that the U.S. Mail

11 solicitation that was sent to a select group of individuals concerning the services available at

12 Oakland Acura was in any way was a protected idea or style of Berkeley Honda.

13        Universal therefore does not have an obligation to defend or indemnify any insured

14 with respect to Berkeley Honda's Complaint under the Policy's Injury Group 4.

15              **2.    Injury Group 1 Does Not Apply**

16        Defendants have also argued that Injury Group 1 – loss of use of tangible property –

17 should apply.   Such a provision does not insure against liability for taking intangible property rights

18 such as loss of intangible property use.  Reading the Complaint as a whole, Berkeley Honda is not

19 contending it lost use of its customer information or any paper it was printed on, but rather

20 complains that Defendants allegedly made their own use of Berkeley Honda's intangible customer

21 information.  In fact, there is no allegation that Berkeley Honda was ever without or denied use of its

22 customer information.  If Berkeley Honda suffered a monetary loss, it was caused not by the

23 inability to use the customer information (which it still could use it), but rather the allegation is that

24 damage was suffered because of Defendants alleged use of that information for its own purposes,

25 which is strictly economic damage does not constitute injury to or loss of use of tangible property.

26 See e.g., *Giddings v. Industrial Indemnity Company,* 112 Cal. App.3rd 213, 219-220, 169 Cal.Rptr.

27 278 (1980) ("strictly economic losses like lost profits, loss of goodwill, loss of anticipated benefit of

28 a bargain, and loss of investment, do not constitute damage or injury to tangible property covered by

1 a comprehensive general liability policy"). Such misuse of information is not loss of use covered by

2 Injury Group 1.

3      In addition, the customer information, which is alleged is to be a trade secret, as

4 discussed above, is not tangible property and, as result, is not within Injury Group 1.

5         **3.    Injury Groups 2, 5 and 6 Do Not Apply**

6      There also is no potential for coverage under Injury Group 2, because that group of

7 offenses ("mental anguish, mental injury, fright, shock, or humiliation except when arising from

8 DISCRIMINATION") concerns mental or emotional injuries. Plaintiff, a business entity, does not

9 assert such wrongs have occurred.

10      Injury Groups 5 and 6 pertain to the context of employer-employee relationships and

11 concern issues relating to benefits administration (Group 5) and discrimination/wrongful termination

12 (Group 6). Neither Injury Group 5 nor Injury Group 6 is alleged or implicated by the *Berkeley*

13 *Honda* action.

14     **C.    Universal Has No Obligation To Provide Independent Counsel, So Universal Is
15          Entitled To Partial Summary Judgment On Its Third Claim For Relief**

16      The Defendants (other than Mr. Nielsen)[1] are not entitled to independent counsel,

17 because California Civil Code section 2860 does not require an insurer to provide independent

18 counsel when an insurer has denied coverage, as opposed to reserving the decision of whether to

19 deny until a later time.

20      An insured's right to independent counsel is governed by California Civil Code

21 section 2860, which was enacted by the California Legislature adopted following the decision in *San*

22 *Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc.,* 162 Cal.App.3d 358, 208 Cal.Rptr.

23 494 (Ct.App. 4th Dist. Div. 1 1984). As the California Supreme Court explained in *Buss v. Superior*

24 *Court,* the enactment of California Civil Code section 2860 clarifies and limits the *Cumis* decision:

25

26 _____

[1] This section of the Brief pertains to all Defendants, except Mr. Nielsen, because based on the
27 allegation asserted against him, Universal permitted Mr. Nielsen to select his own defense counsel,
Mr. Kenny, who was appointed as independent counsel for Mr. Nielsen. (Fischer Decl. ¶ 3 – Exhibit
28 B at 0011.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNIVERSAL UNDERWRITERS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

1     As to the claims that are at least potentially covered, the insurer gives,

2 and the insured gets, just what they bargained for, the mounting and funding of a defense. But as to the claims that are not, the insurer may

3 give, and the insured may get, more than they agreed, depending on whether defense of these claims necessitates any additional costs. For

4 any such costs, the insurer may obtain reimbursement. Buss maintains that, because this is so, as to the claims that are not even potentially

5 covered, the duty to defend is changed retroactively into an obligation merely to 'advance' a 'loan.' It is not. It remains what it was--a duty to

6 mount and fund a defense. In any event, the reality is this: The insurer has paid the underlying sums for the insured's benefit; it may demand

7 that they be repaid. Surely, even if the policy's language were unclear, the hypothetical insured could not have an objectively reasonable

8 expectation that it was entitled to what would in fact be a windfall.

                           * * *

9     Civil Code section 2860 simply 'clarifies and limits' *San Diego Federal Credit Union v. Cumis Ins. Society, Inc., supra,* 162 Cal. App.

10 3d 358.

11 *Buss v. Superior Court,* 16 Cal.4th at 59-60.

12      The limited circumstances requiring an insurer to provide independent counsel are

13 set forth in Civil Code sections 2860(a) and 2860(b), which provide:

14     (a)    If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a

15 duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the

16 insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in

17 writing, the right to independent counsel. An insurance contract may contain a provision which sets forth the method of selecting that

18 counsel consistent with this section.

19     (b)    For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies

20 coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel

21 first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as

22 to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance

23 policy limits.

                           * * *

24 Cal. Civ. Code § 2860.

25      Under California Civil Code section 2860(a), independent counsel is required where

26 the insurer reserves its rights to decide coverage on a particular issue to a later time and the outcome

27 of that issue can be controlled by defense counsel; however, under California Civil Code section

28 2860(b), no conflict exists for "allegations or facts . . . for which the insurer denies coverage."

1    Universal agreed to defend and indemnify against one claim in the Underlying Action

2  – its alleged taking of Berkeley Honda's a cellular telephone – while denying any obligation to

3  indemnify under Injury Group 3 for taking of intangible property, including the customer

4  information. (Fischer Decl. at ¶¶ 2-6 - Exhibits A-E.)  The defense provided by Universal and

5  accepted by the insureds was a defense of the entire action, and Universal did not reserve rights with

6  respect to coverage for the alleged taking of the cellular phone.  *Id.*  Because Universal has denied

7  coverage for the taking of intangible property, as opposed to merely reserving the right to later deny,

8  the insureds are not entitled to independent counsel under Section 2860(b) with respect to

9  Universal's denial of indemnity for that claim.    California courts have recognized that an insurer

10  does not have an obligation to provide its insured independent counsel where the coverage issue

11  involves only damages, and the insurer has agreed to defend and indemnify an insured against a

12  portion of the claim against it, while denying indemnity as to other damages sought against its

13  insured.  See *Blanchard v. State Farm Fire & Casualty Co.,* 2 Cal.App.4th 345, 350, 2 Cal.Rptr.2d

14  884 (Ct.App. 2nd Dist. Div. 5 1991); see also *Dynamic Concepts, Inc. v. Truck Insurance Exch.,* 61

15  Cal.App.4th 999, 1006, 71 Cal.Rptr.2d 882 (Ct.App.4th Dist. Div. 3 1998) (insured is not

16  automatically entitled to independent counsel when an action against it involves both covered and

17  uncovered claims).

18    While Universal agreed to advance the costs associated with the insureds' retention of

19  Mr. Webster as its independent counsel with respect to the Underlying Action, in addition to the law

20  firm Universal retained for the insureds, this was done subject to a reservation of the right to contest

21  that alleged entitlement.  Universal has informed the insureds that Universal disagrees that the

22  insureds were entitled to independent counsel and Universal would seek to recoup all amounts

23  advanced as independent counsel costs:

24    Universal respectively disagrees that independent counsel is
      appropriate or warranted in this circumstance with respect to Oakland
25    Acura, Proformance Associates, Inc.; Walnut Creek Honda; Phillip
      Peterson; and Gordon Walton.  Civi[l] Code section 2860(b) clearly
26    states that "a conflict of interest [requiring the insurer to pay for
      independent counsel] does not exist as to allegations or facts for which
27    the insurer denies coverage."  Universal has denied coverage for all
      allegations as to which any coverage issues have been raised, so it
28    firmly believes there is no right to independent counsel paid for by the

1  insurer in this matter.

2  Without waiving the foregoing, in the interests of working with its
insureds to resolve their mutual differences, and subject to Universal's
3  reservation of its right to recoup all monies that may be advanced for
independent counsel expenses and your firm's compliance with the
4  limitations and obligations set forth in California Civil Code section
2860, Universal agrees to advance your office's reasonable and
5  necessary fees and costs as independent counsel to monitor the defense
of your clients in the above-referenced action. . . Universal reserves all
6  rights in this respect, including the right to revisit the determination of
whether its obligated to pay for independent counsel in this matter,
7  which includes the right to recoup all amounts advanced.

8  (Stern. Decl. at ¶ 4 – Exhibit B at 0001-0002.)

9  In defending the insureds against the *Berkeley Honda* Action, Universal earlier had

10  confirmed that the law firm Universal retained to defend the insureds (other than Mr. Nielsen) would

11  provide a full defense of all claims asserted against them irrespective of whether coverage existed

12  for a particular claim:

13  Defense counsel will continue to provide you a complete defense to all
claims asserted without regard for whether a judgment on any
14  particular claim is covered or is not covered. Please note that defense
counsel is entitled to your cooperation and assistance, and that such
15  cooperation and assistance will maximize your chances for a favorable
outcome in the Action.
16

17  (Fischer Decl. at ¶¶ 2-6 – Exhibits A at 0011, Exhibits C - E at 0010.)

18  Universal's position that it was not obligated to provide independent counsel and that

19  it would seek a judicial determination on the issue, plus recover defense costs, was made

20  unmistakably clear. To date, Universal has advanced $15,940.80 for independent counsel fees.

21  (Fischer Decl. at ¶ 12.) Given that Universal is not defending under a reservation of rights to decide

22  coverage later, but rather acknowledges its coverage obligation under Injury Group 3 with liability

23  for the taking of tangible property, and has otherwise denied indemnity, there is no conflict of

24  interest that obligates Universal to provide independent counsel. Universal therefore is entitled to a

25  declaration that it is not obligated to provide the insureds independent counsel.

26  ///

27  ///

28  ///

VI.    **CONCLUSION**

Based on the foregoing, Universal is entitled to partial summary judgment as a matter of law on Counts One, Two and Three of its Complaint.  Universal has no obligations with respect to the claims relating to the alleged taking and use of Berkeley Honda's intellectual property under the Policy.  On the other hand, Universal has acknowledged coverage for the theft of the cell phone, which falls within the scope of the offense of "invasion of the right of possession of personal property."  Because Universal has not reserved the right to later decide coverage with respect to any claim alleged in the *Berkeley Honda* Action, the Defendants are not entitled to independent counsel and Universal is entitled to recoup the $15,940.80 that it advanced, subject to a reservation of rights.

**DUANE MORRIS** LLP

Attorneys for Plaintiff
Universal Underwriters Insurance Company

Dated: March 21, 2008          By:    _____
                                       Max H. Stern

DM1\1193661

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNIVERSAL UNDERWRITERS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

*Universal Underwriters Ins. Co. v. Oakland Acura, et al.*
*United States District Court, No.: C 07 2858 SC*

## PROOF OF SERVICE

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to this lawsuit. My business address is Duane Morris LLP, One Market Plaza, Spear Tower, Suite 2000, San Francisco, California 94105. On the date listed below, I served the following document:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNIVERSAL UNDERWRITERS INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

      **See attached list**

☐    **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    **BY FACSIMILE:** I served said document(s) to be transmitted by facsimile at approximately _____ a.m./p.m. pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was (415) 955-2599. The name(s) and facsimile machine telephone number(s) of the person(s) served is listed in the attached service list marked with a ^^^. A transmission report was properly issued by the sending facsimile machine, and the transmission was reported as complete and without error.

☒    **BY ELECTRONIC SERVICE:** I served a true copy electronically on designated recipients through https://ecf.cand.uscourts.gov. Upon completion of electronic transmission of said document(s), a receipt is issued to serving party acknowledging receipt by this system.

Executed on March 21, 2008, at San Francisco, California.

_____
JoAnna Soliman