# EXHIBIT B

DEALER FAX: (916) 787-3177
ASM FAX: (916) 787-3174
CLAIMS FAX: (916) 787-3181

TELEPHONE: (916) 787-3100
TOLL FREE: (800) 572-8842

# UNIVERSAL UNDERWRITERS GROUP

REGIONAL OFFICE—2901 Douglas Boulevard, Suite 355 • Roseville, CA 95661

## MEMBER COMPANIES

UNIVERSAL UNDERWRITERS INSURANCE COMPANY
UNIVERSAL UNDERWRITERS SERVICE CORPORATION
UNIVERSAL UNDERWRITERS ACCEPTANCE CORPORATION
UNIVERSAL UNDERWRITERS INSURANCE SERVICES OF TEXAS, INC.

UNIVERSAL UNDERWRITERS LIFE INSURANCE COMPANY
UNIVERSAL UNDERWRITERS OF TEXAS INSURANCE COMPANY
UNIVERSAL UNDERWRITERS INSURANCE SERVICES, INC.
UNIVERSAL UNDERWRITERS INSURANCE SERVICES OF ALABAMA, INC.

April 28, 2006

**Via Certified Mail/
Return Receipt Requested**

Mr. James Nielsen
c/o Denis S. Kenny, Esq.
Scherer Smith & Kenny LLP
140 Geary Street, Seventh Floor
San Francisco, CA 94108

Re:    *Berkeley Auto Group, LLC dba Berkeley Honda, Plaintiff v, James Nielsen, an
individual, Walnut Creek Associates 5, Inc., and Proformance Associates, Inc. et al.,
Defendants*
Contra Costa Superior Court Case No. C 05-2372
Insured:         Oakland Acura
Policy No.:      261712
Date of Loss:    August 31, 2005
UUG Claim No.:   902-000-3551

Dear Mr. Kenny:

This letter sets forth the coverage position of Universal Underwriters Insurance Company ("Universal")
as to the claims against James Nielsen in the above-referenced action (the "Action"). As you aware,
Universal previously agreed to defend Mr. Nielsen with respect to the Action, subject to a reservation of
rights. This letter discusses the nature of Universal's reservation of rights in further detail. In summary,
Universal has accepted Mr. Nielsen's tender of defense of the Complaint under the Policy's Injury
coverage part, subject to our reservation of all rights as described below. However, Universal has no
obligation to indemnify Mr. Nielsen for any judgment on or settlement of the Complaint, except with
respect to the alleged conversion of Berkeley Honda's personal property (*e.g.*, the cell phone), not
intellectual property. Consequently, while the coverage limits under the Injury coverage part are
$500,000 per occurrence, the vast majority of the allegations in the Complaint are not covered by the
Policy.

## The Complaint

The allegations of the Complaint are set forth in detail below because of the coverage issues they raise;
Universal does not mean to suggest that there is any truth to these allegations.

The Complaint of Berkeley Auto Group, LLC dba Berkeley Honda ("Berkeley Honda") against Oakland
Acura and Mr. Nielsen was filed on November 10, 2005, in the Superior Court of California in and for the
County of Contra Costa, case number C 05-02372. The First Amended Complaint was filed on or about
November 29, 2005 ("Complaint".)

By way of background, this action arises out of Berkeley Honda former service manager and staff
coordinator's, James Nielsen, alleged taking of Berkeley Honda's proprietary and confidential customer
lists and customer information, prior to the time that he left Berkeley

C1374DDE  © Copyright 2005 Universal Underwriters Insurance Company

Mr. James Nielsen
c/o Denis S. Kenny, Esq.
April 28, 2006
Page 2

Honda's employment on August 31, 2005, and beginning to work for Oakland Acura - an alleged competitor of Berkeley Honda.

It is alleged that, because of Mr. Nielsen's position and responsibilities at Berkeley Honda, Mr. Nielsen had access to "password-protected computer systems, which maintained Berkeley Honda's trade secret and confidential and proprietary information; namely Berkeley Honda's customer list, consisting of tens of thousands of customers, and personal customer information, including financial information and service records." (Complaint at ¶¶4, 19-23.)

Berkeley Honda further alleges that, prior to or shortly after August 31, 2005, Mr. Nielsen stole Berkeley Honda's proprietary and confidential customer lists and customer information. (Complaint at ¶¶ 5, 24-25.) Berkeley Honda contends that Mr. Nielsen used that information "for his own economic advantage as well as that of Oakland Acura." (Complaint at ¶¶ 6, 25.) Berkeley Honda also asserts that Mr. Nielsen converted Berkeley Honda's telephone equipment (a mobile phone) and phone number for the benefit of Mr. Nielsen and Oakland Acura. (Complaint at ¶ 6.) Berkeley Honda contends that Mr. Nielsen solicited business from existing and former customers of Berkeley Honda "including using the U.S. Postal Service to mail a solicitation to customers from Berkeley Honda's customer list" while Mr. Nielsen was employed by Oakland Acura, that Oakland Acura "knew and had reason to know" that Mr. Nielsen possessed Berkeley Honda's confidential information, and that Oakland Acura "authorized and participated in the mailing of the solicitation to Berkeley Honda's customers." (Complaint at ¶¶ 7-8, 28.) It is further alleged that solicitation included the purportedly converted phone number of Berkeley Honda that now was being used by the defendants. (Complaint at ¶¶ 7, 29.)

On October 6 or 7, 2005, Berkeley Honda's Steve Haworth telephoned the personnel manager for Oakland Acura, Jeanette Lettich, to discuss Mr. Nielsen's alleged actions, and on October 10, 2005, Ms. Lettich confirmed that a solicitation was mailed by Oakland Acura to individual Berkeley Honda customers utilizing the customer information that Mr. Nielsen had taken from Berkeley Honda. (Complaint at ¶¶ 31-32.) A copy of the mailer was attached to the Complaint, which reads as follows:

> "I am now Service Manager at Oakland Acura.
>
> If you are looking for your old friend, Jim Nielsen, formerly at Berkeley Honda, I moved on to a new job joining my friend Phil Peterson's great team at Oakland Acura.
>
> Acura you say ... don't panic. Our Complainttory-trained technicians service and repair Honda's too. This is a beautiful facility offering may amenities like, continental breakfast, free shuttles, Acura loaner vehicles, complimentary car way vouchers, and Saturday services.....
>
> Jim Nielsen, (510) 812-7474."

Mr. James Nielsen
c/o Denis S. Kenny, Esq.
April 28, 2006
Page 3

Berkeley Honda's Complaint contains ten causes of action, including causes of action for: (1) Misappropriation of Trade Secrets; (2) Unfair Competition in Violation of Business & Professions Code section 17200; (3) Intentional Interference with Prospective Economic Advantage: (4) Conversion; (5) Trespass; (6) Accounting; (7) Breach of Confidence; (8) Unjust Enrichment; (9) Injunction under Civil Code Section 3422 and Code of Civil Procedure Section 526; and (10) Negligent Supervision. Each of the causes of action are asserted against all defendants, with the exceptions that the Breach of Confidence cause of action is only against Mr. Nielsen and the Negligent Supervision cause of action is only against the corporate defendants.

In the First Cause of Action for Misappropriation of Trade Secrets, Berkeley Honda describes its development of its customer database and the safeguards it utilized to protect the same. (Complaint at ¶¶ 38-39.) It asserts that all of the defendants used the customer database without authorization, which had been acquired by improper means or, at a minimum, acquired under circumstances in which the defendants had a duty to maintain its secrecy or limit its use. (Complaint at ¶ 40.) However, because the defendants misappropriated the information on Berkeley Honda's customer list, they were liable under California Civil Code section 3426.1 and/or other statutes or common law. (Complaint at ¶ 40.) As a result, Berkeley Honda states that the defendants were unjustly enriched and it was entitled damages and injunctive relief under California Civil Code sections 3426.2 and 3426.3. Berkeley Honda also claims that, because the misappropriation was "willful and malicious," Berkeley Honda is entitled to exemplar damages in an amount not less than double the damage incurred pursuant to California Civil Code section 3426.3. (Complaint at ¶ 42.) Alternatively, Berkeley Honda seeks a reasonable royalty if damages are not provable at trial. (Complaint at ¶ 43.) Moreover, it seeks attorney's fees under California Civil Code section 3426.4. (Complaint at ¶ 44.)

The Second Cause of Action is for Unfair Competition in Violation of California Business & Professions Code section 17200 et seq. In this cause of action, plaintiff merely incorporates the earlier allegations in the Complaint, and seeks disgorgement of any profits the defendants have received as a result of their wrongful conduct, and to enjoin the defendants from using, disposing or wasting any monies obtained by way of the alleged wrongful conduct. (Complaint at ¶ 48.)

The Third Cause of Action is for Intentional Interference With Prospective Economic Advantage. Plaintiff asserts that Oakland Acura, Mr. Nielsen and the other defendants "have knowledge of and intentionally and wrongfully interfered with and have disrupted" Berkeley Honda's relationships with its customers and the resulting economic benefit that Berkeley Honda expected to obtain as a result of the use, misappropriation and disclosing of Berkeley Honda's confidential customer lists. (Complaint at ¶ 51.) In addition to seeking damages, Berkeley Honda asserts that there is no adequate remedy at law unless all defendants' conduct is enjoined. Moreover, it asserts that the conduct was "wilful and undertaken with malice, fraud, oppression and an intent to injure Berkeley Honda," which entitles Berkeley Honda to punitive damages. (Complaint at ¶ 55.)

The Fourth Cause of Action is for Conversion. Like all of the other causes of action, this cause of action incorporates prior allegations, including the alleged taking of Berkeley Honda's mobile

Mr. James Nielsen
c/o Denis S. Kenny, Esq.
April 28, 2006
Page 4

telephone. It is asserted that on August 31, 2005, Mr. Nielsen "intended to and did take certain of the aforementioned Confidential Information, without Plaintiff's knowledge, and converted it for his use and benefit of Oakland Acura," and, as a result, the defendants have been unjustly enriched by amounts to be proven at trial. (Complaint at ¶¶ 58-59.) The conduct was alleged to be "wilful and undertaken with malice, fraud, oppression and an intent to injure Berkeley Honda," which entitles Berkeley Honda to punitive damages. (Complaint at ¶ 60.)

The Fifth Cause of Action is for Trespass. In this cause of action, plaintiff claims that on August 31, 2005, Mr. Nielsen "intended to and did take certain of the aforementioned Confidential Information from plaintiff's business, without Plaintiff's knowledge, and interfered with Plaintiff's possession and use of the Confidential Information," and converted it for defendants' benefit, which resulted in the defendants being unjustly enriched by amounts to be proven at trial. (Complaint at ¶ 63-64.) In this Trespass cause of action, plaintiffs also seeks to enjoin the defendants. (Complaint at ¶ 65.)

The Sixth Cause of Action is for Accounting, in which plaintiff asserts that defendants' use of the trade secret information -- the customer list -- has resulted in defendants obtaining income and profits that properly belong to Berkeley Honda. (Complaint at ¶ 67.) Berkeley Honda contends that, without an accounting by way of an order of this Court, it has no means to determine the income and profits of defendants. (Complaint at ¶ 68.)

The Seventh Cause of Action is for Breach of Confidence, only is asserted against Mr. Nielsen. In this cause of action, it is claimed that Berkeley Honda and Mr. Nielsen had a mutual understanding that the Confidential Information "would be maintained in a confidential manner" and that Mr. Nielsen was only provided access to that information and a password so long as he was employed by Berkeley Honda. (Complaint at ¶ 70.) Berkeley Honda asserts that Mr. Nielsen's taking of the Confidential Information was done "intentionally," and his disclosing it to Oakland Acura violated his duty of confidentiality. (Complaint at ¶ 71.) As a result of the complained of conduct, Berkeley Honda asserts that it has been damaged, that defendants have been unjustly enriched, and that an injunction is necessary, because there is no adequate remedy at law. (Complaint at ¶¶ 71-72, 74.) Berkeley Honda claims that Mr. Nielsen's conduct was "willful and undertaken with malice, fraud, oppression and an intent to injure Berkeley Honda and unlawfully benefit himself." (Complaint at ¶ 74.)

The Eighth Cause of Action is for Unjust Enrichment with respect to the use of the Confidential Information. (Complaint at ¶76-77.) Consequently, Berkeley Honda contends it is entitled to restitution and disgorgement -- "restitutionary damage as disgorgement of any profits received by Defendants" -- that they contend are held in constructive trust for Berkeley Honda. (Complaint at ¶ 78.)

The Ninth Cause of Action is for an Injunction Under California Civil Code Section 526, because otherwise it will suffer irreparable harm. (Complaint at ¶ 80.) The conduct that sought to be restrained included: (1) continued misappropriation of Berkeley Honda's Confidential Information; (2) continued use of Berkeley Honda's phone number as their own thereby usurping

Mr. James Nielsen
c/o Denis S. Kenny, Esq.
April 28, 2006
Page 5

business opportunities belonging to Berkeley Honda; (3) further soliciting of Berkeley Honda's customers; (4) continued unjustly profiting from the Confidential Information; (5) potentially violating the privacy of Berkeley Honda's customers. (Complaint at ¶ 81.)

The Tenth Cause of Action is for Negligent Supervision against the corporate defendants, which are alleged to be the employers and supervisors of Mr. Nielsen. (Complaint at ¶ 84.) It is asserted each defendant is an agent, servant, and employee of the other defendants, that Oakland Acura failed to return the customer list, that they failed to exercise reasonable care in the application, hiring, supervision, conduct and review of its employees, and should have safeguarded against the misappropriation of Berkeley Honda's customer list. (Complaint at ¶¶86-92.)

Berkeley Honda's Prayer for Relief includes requests for: (1) compensatory damages; (2) punitive damages; (3) imposition of a constructive trust on all revenue, profits, gains and compensation or advantage from the alleged misconduct; (4) an accounting; (5) pre-judgment interest; (6) an injunctive relief; (7) costs of suit, including attorney's fees; and (8) other relief that the court may deem appropriate.

## The Policy

Universal insures Oakland Acura and Proformance Associates, Inc., under insurance policy number 261712 (October 1, 2004 – October 1, 2005), and Universal insures Oakland Acura and Proformance Associates, Inc., under insurance policy number 2617112 (October 1, 2005 to October 1, 2006), with both policies written on the Unicover-V (Edition 3-98) policy form. The wording of the insuring agreement from the relevant Coverage Part of the Unicover-V policy form, The Insuring Agreement of the Universal Underwriters Garage Coverage Part 500, provides as follows:

> **INSURING AGREEMENT** – WE will pay all sums the INSURED legally must pay as DAMAGES (including punitive DAMAGES where insurable by law) because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.
>
> \*    \*    \*
>
> WE will pay all sums the INSURED legally must pay as DAMAGES (including punitive DAMAGES where insurable by law) because of STATUTE AND TITLE E&O when such insurance is included in the declarations.
>
> WE have the right and duty to defend any SUIT asking for these DAMAGES. WE may investigate and settle any claim or SUIT WE consider appropriate. OUR payment of the limit shown in the

Mr. James Nielsen
c/o Denis S. Kenny, Esq.
April 28, 2006
Page 6

declarations ends OUR duty to defend.

WE have no right or duty to defend SUITS for DAMAGES not covered by or declared for this Coverage Part.

WE will pay all defense costs actually incurred to defend any SUIT asking for CUSTOMER COMPLAINT DEFENSE and EMPLOYMENT RELATED DEFENSE when such insurance is included in the declarations. We may investigate and, at OUR option, settle any such SUIT. If WE settle a SUIT, the settlement will be at OUR expense except for the applicable deductible. Otherwise, all court costs, settlements and DAMAGES assessed against YOU will be at YOUR expense. [WE have no right or duty to pay defense costs for:

(A)     Any claim or SUIT where the legislative or courts have determined, for public policy reasons, that an insured cannot be indemnified for the harm to plaintiff; or

(B)     Any claim or SUIT not covered by or declared for this coverage part.][1]

The relevant highlighted terms are defined as follows:

"CUSTOMER COMPLAINT DEFENSE" means any SUIT filed against YOU during the Coverage Part period by or on behalf of a customer arising out of the sale, lease, rental, service or repair of YOUR PRODUCT, other than as a direct result of an OCCURRENCE or as defined in STATUTE AND TITLE E&O.

"DAMAGES" means amounts awardable by a court of law. With respect to INJURY Group 6, DAMAGES also means amounts awardable by administrative agencies. DAMAGES does not mean civil penalties, fines or assessments.

"GARAGE OPERATIONS" mean the ownership, maintenance or use of the portion of any premises where YOU conduct YOUR

---

[1]     Bracketed portion added by Endorsement No. 326.

Mr. James Nielsen
c/o Denis S. Kenny, Esq.
April 28, 2006
Page 7

AUTO business and all other operations necessary or incidental thereto.

"INJURY" means, with respect to:

Group 1 -- bodily injury, sickness, disease or disability (including death resulting from any of these) or damage to or loss of use of tangible property;

Group 2 -- mental anguish, mental injury, fright, shock, or humiliation, except when arising from DISCRIMINATION;

Group 3 -- false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, abuse of process, libel, slander, defamation of character, private nuisance (except pollution), invasion of rights of privacy or possession of personal property;

Group 4 -- plagiarism, misappropriation of advertising ideas or style, infringement of copyright, title, slogan or trademark;

Group 5 -- any error or omission of the ADMINISTRATION of YOUR profit sharing, pension or employee stock subscription plans or YOUR group life, group hospitalization or major medical, group accident and health, Worker's Compensation, unemployment, social security or disability benefits insurance;

Group 6 -- DISCRIMINATION [or WRONGFUL TERMINATION].[2]

"OCCURRENCE", with respect to COVERED POLLUTION DAMAGES, INJURY Groups 1 and 2 means an accident, including continuous or repeated exposure to conditions, which results in such INJURY or COVERED POLLUTION DAMAGES during the Coverage Part period neither intended nor expected from the standpoint of a reasonably prudent person.

---

[2]    Bracketed portion added by Endorsement No. 162.

Exhibit B - 0007

Mr. James Nielsen
c/o Denis S. Kenny, Esq.
April 28, 2006
Page 8

With respect to INJURY groups 3, 4, 5 and 6, OCCURRENCE means acts of the INSURED during the Coverage Part period which result in such INJURY.

"STATUTE AND TITLE E & O" means any SUIT filed against YOU, other than as a result of an OCCURRENCE or CUSTOMER COMPLAINT DEFENSE. Such SUITS must be filed by:

(A)    A customer arising out of GARAGE OPERATIONS, because of an alleged violation during the coverage part period, of any federal, state or local:

(1)    odometer statute;
(2)    truth-in-lending or truth-in-leasing statute;
(3)    auto damage disclosure statute;
(4)    competitive auto parts statute; or
(5)    used car buyer's guide, including federal regulation 455;

(B)    Any person or organization who has suffered a financial LOSS due to the failure of YOUR employee to properly specify during the coverage.

"SUIT" means a civil action for DAMAGES, including arbitration or mediation to which the INSURED must submit or submits with OUR consent. A class action is one SUIT. SUIT does not mean administrative actions (except under INJURY Group 6 and EMPLOYMENT RELATED DEFENSE) or equitable actions.

The Policy defines the term INSURED in a section entitled "WHO IS AN INSURED," which provides:

**WHO IS AN INSURED** – with respect to GARAGE OPERATIONS (other than the AUTO HAZARD), CUSTOMER COMPLAINT DEFENSE or STATUTE AND TITLE E&O:

(1) YOU;

(2) YOUR spouse, if YOU are a sole proprietorship;

Mr. James Nielsen
c/o Denis S. Kenny, Esq.
April 28, 2006
Page 9

(3) Any of YOUR partners and their spouses, paid employees, directors, executive officers, stockholders, while acting within the scope of their duties as such.

The Policy is also subject to the following exclusions:

**EXCLUSIONS** – This insurance does not apply to:

(a)    INJURY, EMPLOYMENT RELATED DEFENSE, COVERED POLLUTION DAMAGES, CUSTOMER COMPLAINT DEFENSE or STATUTE AND TITLE E&O, if caused by any dishonest, fraudulent or criminal acts committed by any INSURED;

(b)    any act committed by or at the direction of the INSURED with intent to cause harm. This exclusion does not apply if INJURY arises solely from the intentional use of reasonable force for the purpose of protecting persons or property;

(m)    INJURY, as defined in Groups 3 and 4 if the first injurious offense was committed prior to the Coverage part period;...

**<u>Discussion</u>**

Universal is defending Mr. Nielsen under Injury Group 3, based on the allegation of conversion of personal property, not intellectual property, belonging to Berkeley Honda (*e.g.*, the cell phone) which is incorporated in the allegations of the Fourth Cause of Action. Universal's potential indemnity obligation is limited to DAMAGES the insured is obligated to pay for the alleged conversion, and not for any other allegations in the Complaint. The other allegations of the Complaint do not fall within the scope of the Policy's Injury coverage part.

Universal has determined that the coverage in the Policy for liability for DAMAGES because of Injury does not apply to any of the causes of action other than potentially the Fourth Cause of Action . The First through Third Causes of Action and the Fifth through Ninth Causes of Action do not seek DAMAGES for any of the enumerated offenses that fall within the scope of the Injury coverage part. Accordingly, there is no indemnity coverage for those causes of action.

Moreover, you are only insured under Oakland Acura's policy with respect to GARAGE OPERATIONS while you acted within the scope of your duties with Oakland Acura as provided in the "WHO IS AN INSURED" section of the Policy. Acts outside of the scope of your duties with Oakland Acura are not covered by the policy issued to Oakland Acura.

Exhibit B - 0009

Mr. James Nielsen
c/o Denis S. Kenny, Esq.
April 28, 2006
Page 10

To the extent that equitable remedies (such as rescission, restitution, disgorgement, accounting, or injunctive relief) are sought in the Complaint, such claims are not covered. For instance, the Complaint seeks disgorgement, restitution, accounting, and injunctive relief. Such claims for equitable relief are not covered under the Policy. The defense clause in the Policy's Insuring Agreement limits Universal's defense obligation to a SUIT, and the Policy's definition of SUIT excludes "equitable actions" from being a SUIT. Pursuant to the explicit limitation in the definition of SUIT, Universal's policy is not obligated to defend equitable actions. As a result, those remedies sought in plaintiff's Second Cause of Action (Unfair Competition in Violation of California Business & Professions Code section 17200 et seq.), Fourth Cause of Action (Conversion), Fifth Cause of Action (Trespass), Sixth Cause of Action (Accounting), Seventh Cause of Action (Breach of Confidence), Eighth Cause of Action (Unjust Enrichment), and Ninth Cause of Action (Injunction Under California Civil Code section 526) are not covered by the Policy. In addition, there is no coverage for these causes of action where DAMAGES at law are not sought and/or recoverable.

In addition to the foregoing, California courts have determined that California public policy prohibits coverage for any awards pursuant to violations of California Business and Professions Code sections 17200 et seq. (the Second Cause of Action), as well as for awards of restitution or disgorgement of ill-gotten gains, or for punitive damages. See also Cal. Ins. Code § 533 ("[a] n insurer is not liable for a loss caused by the willful act of the insured [.]"); Civil Code § 1668 ("[a] ll contracts, which have for their object directly or indirectly, to exempt anyone from responsibility for his own fraud or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."); Civil Code § 2773 ("[a] n agreement to indemnify a person against an act thereafter to be done, is void, if the act be known by such person at the time of doing it to be unlawful.") Accordingly, there is no coverage for such awards such as are sought in the First, Second, Third, Fourth, Fifth and Seventh Causes of Action in the Complaint.

Also, the First Cause of Action asserts a claim for misappropriation of trade secret, the Third Cause of Action asserts a claim for intentional interference with prospective economic advantage, the Fourth Cause of Action asserts a claim for conversion, the Fifth Cause of Action asserts a claim for conversion, and the Seventh Cause of Action asserts a claim for breach of confidence. The Policy also excludes coverage for dishonest or fraudulent acts (Exclusion (a)) and for acts committed with intent to cause harm (Exclusion (b)), and as noted, California has recognized a public policy bar to insurance coverage of willful wrongs, such as those asserted in the causes of action identified above, pursuant to Insurance Code section 533.

In addition, Exclusion (m) negates any coverage under Injury Groups 3 or 4 for any injurious event that occurred prior to the coverage period. Because it is asserted in the Complaint that Berkeley Honda's alleged confidential information and cell phone was taken prior or shortly after August 31, 2005, and the second policy commenced coverage October 1, 2005, there would

Exhibit B - 0010

Mr. James Nielsen
c/o Denis S. Kenny, Esq.
April 28, 2006
Page 11

be no coverage under the policy commencing October 1, 2005 for such injurious offenses occurring prior to October 1, 2005.

Finally, to the extent that civil penalties, fines, or assessments are sought for the any of the causes of action in the Complaint, including those sought as part of the First Cause of Action for Misappropriation of Trade Secrets, such amounts are not within the scope of "DAMAGES" covered by the Policy. Thus, there is no coverage for statutory awards in excess of actual damages (such as multiplied damages).

Without waiving the foregoing, Universal is willing to provide you a defense under the Injury Group 3 coverage, subject to our reservation of rights below. Specifically, we will provide you a complete defense to the Complaint by advancing (subject to this reservation of rights) the reasonable defense expenses of defense counsel selected by us pursuant to our right to designate defense counsel. However, we reserve all rights, including but not limited to the following: (1) we reserve the right to not pay for a judgment or settlement to the extent we determine that such liability is not covered; (2) we reserve the right to initiate a separate action to determine our duty to defend or indemnify you; (3) we reserve the right to withdraw from your defense if there is no potential for covered liability to be imposed on you in the Action; (4) we reserve the right to reclaim any amounts paid as defense expenses for any amounts that are not reasonable or that can be attributed to liability that is not potentially covered; (5) we reserve the right to request your participation in settlement of any uncovered liability or to recover from you any contribution to a reasonable settlement that we make that is attributable to uncovered liability; and (6) we reserve the right to seek contribution or subrogation from your other insurers for any defense or indemnity payments made by us.

We understand that you have retained Denis Kenny of the law firm of Scherer Smith & Kenny LLP to serve as your independent defense counsel in the Action pursuant to California Civil Code section 2860. We have agreed to your selection of this independent counsel, subject to their compliance with the limitations and obligations set forth in section 2860. We reserve all rights in this respect, including the right to revisit the determination of whether we are obligated to pay for your independent counsel in this matter or instead if we have the right to designate counsel for your defense.

The Complaint seeks relief for which you are not insured. We cannot pay for your attorneys' fees or costs relating to insurance coverage advice. We nonetheless advise you to consider consulting with your own counsel concerning this letter and the coverage issues relating to the Action. If you have any specific questions concerning this letter or our coverage position, I would be happy to answer them, or, if they involve legal questions, to refer you to our outside counsel.

Please be advised that the views and positions stated in this letter are not intended to be exhaustive. Universal does not by the foregoing waive the right to present additional policy

Exhibit B - 0011

Mr. James Nielsen
c/o Denis S. Kenny, Esq.
April 28, 2006
Page 12

terms, conditions or their rights should the situation so merit, and reserves all rights under its policy, at law, in equity, or under public policy.

If you believe Universal's position with respect to this Action to have been taken unfairly, you may contact the California Department of Insurance by calling 1-800-927-HELP or writing the Claims Service Bureau, Department of Insurance, 300 South Spring Street, Los Angeles, CA 90013.

The foregoing constitutes the terms and conditions under which we agree to pay for your defense against the Complaint. If you have any additional factual information that may affect our determination, please be sure to forward it to us for consideration.

Please feel free to contact me to discuss this matter. I can be reached daily at (916) 787-3154. I can also be reached by e-mail at mark.fischer@uug.com.

Sincerely,

Mark D. Fischer
Claims Representative
Universal Underwriters Insurance Company

Exhibit B - 0012