PETER D. NITSCHKE (SBN: 174123)
NITSCHKE & VARRICCHIO LLP
23861 El Toro Road, Suite 700
Lake Forest, CA 92630
Telephone: (949) 830-9400
Facsimile: (949) 830-9405
peter@nvlawgroup.com

Attorneys For Defendants
Walnut Creek Associates 5, Inc. dba Oakland Acura, Proformance Associates, Inc., James Nielsen, Walnut Creek Associates 2, Inc., Walnut Creek Associates, Inc dba Walnut Creek Acura, Philip Peterson and Gordon Walton

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a Kansas Corporation,

Plaintiff,

vs.

WALNUT CREEK ASSOCIATES 5, INC. dba OAKLAND ACURA, a California corporation; PROFORMANCE ASSOCIATES, INC., a California corporation; JAMES NIELSEN, an individual, WALNUT CREEK ASSOCIATES 2, INC., a California corporation; WALNUT CREEK ASSOCIATES 2, INC. dba WALNUT CREEK HONDA, a California corporation, PHILLIP PETERSON, an individual, and GORDON WALTON, an individual

Defendants.

CASE NO. C 07 2858 SC

**DEFENDANTS WALNUT CREEK ASSOCIATES 5, INC. DBA OAKLAND ACURA, PROFORMANCE ASSOCIATES, INC., JAMES NIELSEN, WALNUT CREEK ASSOCIATES 2, INC., WALNUT CREEK ASSOCIATES, INC DBA WALNUT CREEK ACURA, PHILIP PETERSON AND GORDON WALTON'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF PETER D. NITSCHKE**

Complaint Filed: June 1, 2007

Date: April 25, 2008
Time: 10:00 a.m.
Ctrm: 1, 17th Floor
Judge: The Honorable Samuel Conti

COME NOW, Defendants Walnut Creek Associates 5, Inc. dba Oakland Acura, Proformance Associates, Inc., James Nielsen, Walnut Creek Associates 2, Inc., Walnut Creek Associates, Inc dba Walnut Creek Acura, Philip Peterson and Gordon Walton (collectively "Defendants") and submit the following opposition to Plaintiff Universal Underwriters Insurance Company's ("Universal") motion for partial summary judgment.

This opposition is made on the grounds that the insurance policies at issue admittedly provide coverage for the taking of personal property and that customer lists and customer information are personal property.

Defendants' Opposition is based upon the attached Memorandum of Points & Authorities, the Declaration of Peter D. Nitschke, the records and files of this action, and upon whatever oral and documentary evidence that may be presented at the hearing on this motion.

Dated: April 4, 2008

NITSCHKE & VARRICCHIO LLP
PETER D. NITSCHKE

By: s/Peter D. Nitschke
Peter D. Nitschke
Attorneys for Defendants
WALNUT CREEK ASSOCIATES 5, INC. DBA OAKLAND ACURA, PROFORMANCE ASSOCIATES, INC., JAMES NIELSEN, WALNUT CREEK ASOCIATES 2, INC., WALNUT CREEK ASSOCIATES, INC. DBA WALNUT CREEK ACURA, PHILIP PETERSON and GORDON WALTON

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 23861 El Toro Road, Suite 700, Lake Forest, California 92630

On **April 4, 2008,** I caused to be served the foregoing documents described as **DEFENDANTS WALNUT CREEK ASSOCIATES 5, INC. DBA OAKLAND ACURA, PROFORMANCE ASSOCIATES, INC., JAMES NIELSEN, WALNUT CREEK ASSOCIATES 2, INC., WALNUT CREEK ASSOCIATES, INC DBA WALNUT CREEK ACURA, PHILIP PETERSON AND GORDON WALTON'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** on the interested parties as follows:

Max H. Stern, Esq.
William S. Berman, Esq.
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105
Telephone: (415) 957-3000
Facsimile: (415) 957-3001

[ ] **(BY MAIL) -** By placing [ ] the original [X] a true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona. I deposited such envelope in the mail at Lake Forest, California, with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **(BY PERSONAL DELIVERY) -** By retaining a delivery service, OneLegal, and instructing them to deliver [ ] the original [x] a true copy thereof to the above-named counsel of record and or parties in propria persona.

[X] **(BY E-FILING) -** By transmitting this document via the E-Filing System for the District Court for the Northern District of California.

Executed this 4th day of April 2008 at Lake Forest, California

Dated: April 4, 2008

s/Lee Berry
Lee Berry

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

PETER D. NITSCHKE (SBN: 174123)
NITSCHKE & VARRICCHIO LLP
23861 El Toro Road, Suite 700
Lake Forest, CA 92630
Telephone: (949) 830-9400
Facsimile: (949) 830-9405
peter@nvlawgroup.com

Attorneys For Defendants
Walnut Creek Associates 5, Inc. dba Oakland Acura, Proformance Associates, Inc., James Nielsen, Walnut Creek Associates 2, Inc., Walnut Creek Associates, Inc dba Walnut Creek Acura, Philip Peterson and Gordon Walton

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a Kansas Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WALNUT CREEK ASSOCIATES 5, INC. dba OAKLAND ACURA, a California corporation; PROFORMANCE ASSOCIATES, INC., a California corporation; JAMES NIELSEN, an individual, WALNUT CREEK ASSOCIATES 2, INC., a California corporation; WALNUT CREEK ASSOCIATES 2, INC. dba WALNUT CREEK HONDA, a California corporation, PHILLIP PETERSON, an individual, and GORDON WALTON, an individual<br><br>Defendants. | CASE NO. C 07 2858 SC<br><br>**DEFENDANTS WALNUT CREEK ASSOCIATES 5, INC. DBA OAKLAND ACURA, PROFORMANCE ASSOCIATES, INC., JAMES NIELSEN, WALNUT CREEK ASSOCIATES 2, INC., WALNUT CREEK ASSOCIATES, INC DBA WALNUT CREEK ACURA, PHILIP PETERSON AND GORDON WALTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO UNIVERSAL UNDERWRITERS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Complaint Filed: June 1, 2007<br><br>Date: April 25, 2008<br>Time: 10:00 a.m.<br>Ctrm: 1, 17th Floor<br>Judge: The Honorable Samuel Conti |

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

## TABLE OF CONTENTS

Page

I. INTRODUCTION……………………………………………..…….……………...2

II. FACTUAL SUMMARY……………………………………...……….....……….3

A. The Underlying Action ……………………………..……….………...…3

B. The Universal Underwriters' Policies……………………..………........….4

III. SUMMARY JUDGMENT STANDARD………………………...…….……….....…7

IV. LEGAL ARGUMENT……………………………………………..….………...….7

A. The Motion for Partial Summary Judgment Should be Denied Because Personal Property Includes Intangible Property Such as Customer Lists…….....………...7

1. The Ordinary Legal Meaning of "Personal Property" Includes Intangible Property Such as Customer Lists…………….…....….….8

2. Other Policy Provisions Support the Conclusion that Injury Group 3 is Not Limited to Tangible Personal Property……….………..…9

3. Other Provisions of California Law Confirm that Personal Property Includes Intangible Property Such as Customer Lists and Customer Information………………………..…………….………..10

B. Any Ambiguities in the Policies Should be Interpreted in Favor of Coverage for the Insureds…………………………………..………...….…...11

C. Because Personal Property Includes the Customer Information and Customer Lists, Universal Has a Continuing Obligation to Defend the Underlying Complaint……………………………………………….……….……..12

D. A Determination of Universal's Indemnity Obligation is Premature Because The Insureds' Liability Has Not Been Established………………………..…...13

E. The Insureds Are Entitled to Independent Counsel…………………..……...…14

V. CONCLUSION…………………………………………………...…...………..15

TABLE OF AUTHORITIES

CASES

Page(s)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 327, 106 S.Ct.2548, 2555……………………………………….…7

*Bay Cities Paving & Grading, Inc. v. Lawyers Mut. Ins. Co.*, 5 Cal.4th 854, 867, 21 Cal.Rptr.2d 691, 699 (1993)………………….…………11

*Borg v. Transamerica Ins. Co.*, 47 Cal.App.4th 448, 455, 54 Cal.Rptr.2d 811 (1996)………………………..…..13

*Caminetti v. Pacific Mut. Life Ins. Co. of Calif.*, 22 Cal.2d 344, 358, 139 P.2d 908, 915 (1943)……………………………………9

*Continental Cas. Co v. Phoenix Const. Co.*, 46 Cal.2d 423, 437-438, 296 P.2d 801, 809-810 (1956)…………….………..11

*Foster Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal.4th 857, 868, 77 Cal.Rptr.2d 107 (1998)……………………...…………9

*Gyler v. Mission Ins. Co.* 10 Cal.3d 216, 219, 110 Cal.Rptr. 139, 140 (1973)……………………...……11

*Humboldt Bank v. Gulf Insurance Co.*, 323 F.Supp 2d 1027, 1032 (N.D. Cal. 2004)……………………………….……..8

*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal.4th 27, 37, 36 Cal.Rptr.2d 100 (1994)………………………………..…12

*Maryland Casualty Co. v. National American Ins. Co.* 48 Cal.App.4th 1822, 1831, 56 Cal.Rptr.2d (1996)…………………………..…13

*Montrose Chem. Corp of California v. Admiral Ins. Co.*, 10 cal4th 645, 667, 42 Cal.Rptr.2d 324, 335 (1995)……………………..…….8

*Navistar International Transportation Corp. v. State Bd. Of Equalization.*, 8 Cal.4th 868, 874, 35 Cal.Rptr.2d 651……………………………...………..10

*Pardee Construction Co. v. Ins. Co. of the West* 77 CalApp.4th 1340, 1350, 92 Cal.Rptr.2d 443 (2000)………………..…….12, 13

*People v. Gopal* 171 Cal.App.3d 524, 541, 217 Cal.Rptr 487, 497 (1985)…………………...……10

*Preston v. State Bd. Of Equalization.*, 25 Cal.4th 197, 209, 105 Cal.Rptr.2d 407 (2001)………………………………..10

*Rullman v. State Farm Mut. Auto, Ins. Co.*, 8 Cal.App.3d 606, 609, 87 Cal.Rptr 551, 553 (1970)……………………………11

*Safeco Ins. Co. of America v. Robert S.* 26 Cal.4th 758, 765-766, 110 Cal.Rptr.2d 844, 851-852 (2001)……...…………11

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

*Waller v. Truck Ins. Exchange, Inc.*,
11 Cal.4th 1,18, 44 Cal.Rptr.2d 370 (1995)……………………………………..…..11

*Welles v. Turner Entertainment Co.*,
503 F.3d 728, 737 (9th Cir. 1981)…………………………………….………..7

STATUTES

Cal. Civ. Code § 2860(b)……………………………………………………….……..14

OTHER ANNOTATIONS

*Black's Law Dictionary.*,
7th Ed., 2000 at 998…………………………………………………...…..8

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

-iii-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

## I. INTRODUCTION

Defendants Walnut Creek Associates 5, Inc. dba Oakland Acura, Proformance Associates, Inc., James Nielsen, Walnut Creek Associates 2, Inc., Walnut Creek Associates, Inc dba Walnut Creek Acura, Philip Peterson and Gordon Walton (collectively "Defendants" or "Insureds") respectfully request that this Court deny Plaintiff's motion for partial summary judgment because the coverage afforded by the Universal insurance policies for the alleged taking of "personal property" includes the alleged taking of customer lists and information.

In the underlying action, the plaintiff auto dealership alleges that Defendants took its customer list and customer information and a mobile telephone. Universal admits that the policies it issued to Defendants provide coverage for the taking of "personal property." However, through this motion, Universal is asking this Court to rewrite the applicable insurance policies to add the word "tangible" as a limiting modifier to the phrase "personal property" in an attempt to deny Defendants the insurance coverage which they purchased. This attempt to rewrite the insurance policies should not be condoned.

The plain Black Letter Law definition of "personal property" includes ***intangible property***, including customer lists and customer information. Moreover, other language in the applicable policies establishes that personal property in the provision at issue is to include intangible property. Finally, California courts addressing a wide variety of issues have held that personal property includes intangible property.

Perhaps recognizing that the phrase "personal property" identified in the policies is much broader than it now contends, Universal adds terms such as "actual" or "tangible" to modify personal property. Such modifiers are not based on the language of the policies, an ordinary meaning of the term or other uses in California law.

Because personal property includes customer lists and information, Universal is obligated to defend and indemnify its Insureds in the underlying action. Furthermore, because the extent of coverage can be directed and affected by defense counsel in the underlying action, Universal is obligated to continue to provide its insureds with independent counsel.

/ / /

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

## II. FACTUAL SUMMARY

### A. The Underlying Action

Berkeley Auto Group, LLC dba Berkeley Honda ("Berkeley Honda") filed its Complaint against Walnut Creek Associates 5, Inc. dba Oakland Acura ("Oakland Acura"), Proformance Associates, Inc., and Mr. Nielsen on or about November 10, 2005, in the Superior Court of California in and for the County of Contra Costa, case number C 05-02372. Berkeley Honda filed its First Amended Complaint several weeks later, on or about November 29, 2005 ("Underlying Action"). (Universal's Request for Judicial Notice ("RJN") at ¶ 1 – Exhibit A.) On February 10, 2006, Berkeley Honda filed an Amendment to the Complaint that added Doe Defendants, including Walnut Creek Associates 2, Inc., Walnut Creek Associates 2, Inc. dba Walnut Creek Honda, Phillip Peterson and Gordon Walton. (RJN at ¶ 2 – Exhibit B.) On September 14, 2007, the Second Amended Complaint was filed against all Defendants. (RJN at ¶ 3 – Exhibit C.) On January 22, 2008, the Third Amended Complaint was filed. When the Third Amended Complaint was filed, Defendants Walnut Creek Associates 2, Inc., Walnut Creek Associates 2, Inc. dba Walnut Creek Honda, and Proformance Associates, Inc., had been dropped from the Underlying Action, because they had obtained favorable trial court rulings with respect to the claims against them. (RJN at ¶ 4 – Exhibit D.) The Third Amended Complaint states causes of action against Mr. Nielsen, Walnut Creek Associates 5, Inc., Walnut Creek Associates 5, Inc. dba Oakland Acura, Phillip Peterson and Gordon Walton ("Underlying Complaint"). (RJN at ¶ 4 – Exhibit D.)

The Underlying Complaint alleges that Mr. Nielsen was the former service manager and staff coordinator at Berkeley Honda. (RJN at ¶¶ 1, 3, 4 – Exhibit A, C and D at ¶ 3.) Mr. Nielsen voluntarily left his employment with Berkeley Honda on or about August 31, 2005, and then began working for Oakland Acura. (RJN at ¶¶ 1, 3, 4 – Exhibits A, C, and D at ¶¶5, 24.)

The Underlying Complaint alleges that Mr. Nielsen took Berkeley Honda's customer list and customer information with him to Oakland Acura. (RJN at ¶¶ 1, 3, 4 – Exhibits A, C and D at 5-6, 25.) In addition, the Underlying Complaint alleges that Mr. Nielsen took a mobile telephone and phone number belonging to Berkeley Honda and used it while employed by

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

Oakland Acura. (RJN at ¶¶ 1, 3, 4 – Exhibits A, C and D at ¶ 6.)

Berkeley Honda's Complaint contains thirteen causes of action, including causes of action for: (1) Misappropriation of Trade Secrets; (2) Unfair Competition in Violation of Business & Professions Code section 17200; (3) Intentional Interference with Prospective Economic Advantage: (4) Conversion; (5) Trespass; (6) Accounting; (7) Breach of Confidence; (8) Unjust Enrichment; (9) Injunction under Civil Code Section 3422 and Code of Civil Procedure Section 526; and (10) Negligent Supervision, (11) Violation of Penal Code Section 496(c); (12) Violation of Penal Code Section 502(e); and (13) Civil Conspiracy.

**B. The Universal Underwriters' Policies**

Universal issued to Oakland Acura Policy No. 261712, which was in effect from October, 1 2004 to October 1, 2005 ("Policy No. 261712"), and Policy No. 261712, which was in effect from October 1, 2005 to October 1, 2006 (for convenience referred to as "Policy No. 261712A"). (Fischer Decl. at ¶¶ 7-8 – Exhibits F-G.)

Universal issued to Walnut Creek Honda Policy No. 261711, which was in effect from October, 1 2004 to October 1, 2005 ("Policy No. 261711"), and Policy No. 261711A, which was in effect from October 1, 2005 to October 1, 2006 ("Policy No. 261711A"). (Fischer Decl. at ¶¶ 9-10 – Exhibits H and I respectively.)

The policy provisions at issue in Policy Nos. 261712 and 261712A (the "Oakland Acura Policies") (Fischer Decl. at ¶¶ 7-8 – Exhibits F-G) and Policy Nos. 261711 and 261711A ( the "Walnut Creek Honda Policies") (Fischer Decl. at ¶¶ 9-10 – Exhibits H - I) are identical with respect to the primary liability insurance provided under Garage Coverage Part 500. Collectively, the Oakland Acura Policies and the Walnut Creek Policies are referred to herein as "the Policies." (Fischer Decl. at ¶¶ 7-10 – Exhibits F and I, respectively.)

The part of the Policies relevant to coverage for the Underlying Complaint is the Garage Coverage Part 500. The first and fifth paragraphs of the Insuring Agreement of the Universal Underwriters Garage Coverage Part 500 of the Policies set forth Universal's duty to defend and indemnify, as follows:

> WE will pay all sums the INSURED legally pays as DAMAGES (including punitive DAMAGES where insurable by law) because

> of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.
>
> ***
>
> WE have the right and duty to defend any SUIT asking for these DAMAGES. WE may investigate and settle any claims or SUIT WE consider appropriate. OUR payment of the limit shown in the declarations ends OUR duty to defend.

(Fischer Decl. at ¶¶ 7-10 – Exhibits F at 0053; G at 0054; H at 0055; and I at 0056.)

The Garage Coverage Part 500 of the Policies, as amended by Endorsement No. 162, defines "DAMAGES" and "SUIT" as follows;

> "DAMAGES" means amounts awardable by a court of law. With respect to INJURY Group 6, DAMAGES also means amounts awardable by administrative agencies, back pay awards, front pay awards, compensatory damages, and where insurable by law, punitive damages, prejudgment interest, post-judgment interest, and settlements.
>
> "DAMAGES" does not mean:
>
> 1. civil penalties, fines, assessments or equitable remedies except those listed above or;
>
> 2. severance pay or DAMAGES under an express written contract of employment or an express written obligation to make payments in the event of the termination of employment.
>
> ***
>
> "SUIT" means a civil action for DAMAGES, including arbitration or mediation or any other alternative dispute resolution proceedings to which the INSURED must submit or submits with OUR consent. A class action is one SUIT. SUIT does not mean administrative actions (except under INJURY Group 6 and EMPLOYMENT RELATED DEFENSE) or equitable actions.

(Fischer Decl. at ¶¶ 7-10 – Exhibits F at 00132-33; G at 0133-34; H at 0134-35; and I 0135-36.)

The "INJURY" coverage, set forth in the first paragraph of the Insuring Agreement of the Garage Coverage Part 500 of the Policies, as amended by Endorsements Nos. 162 and 410, provides coverage for injury. The Polices define such "INJURY" as follows:

> Group 1 – bodily injury, sickness, disease or disability (including death resulting from any of these) or damage to or loss of use of tangible property;

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

> Group 2 – mental anguish, mental injury, fright, shock, or humiliation except when arising from DISCRIMINATION
>
> Group 3 – false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, abuse of process, libel, slander, defamation of character, private nuisance (except pollution), invasion of the right of possession of personal property, common law claims for invasion of the right of privacy;
>
> Group 4 – plagiarism, misappropriation of advertising ideas or style, infringement of copyright, title, slogan or trademarks;
>
> Group 5 – any error or omission in the ADMINISTRATION of YOUR profit sharing, pension or employment stock subscription plans or YOUR group life, group hospitalization or major medical, group accident and health, Worker's Compensation, unemployment, social security or disability benefits insurance;…
>
> Group 6 – DISCRIMINATION or WRONGFUL EMPLOYMENT PRACTICES.

(Fischer Decl. at ¶¶ 7-10 – Exhibits F at 0054, 0132, 0175; G at 0055, 0133, 0177; H at 0056, 0134, 0180; and I at 0057, 0135, 0182.)

In essence, Injury Group 1 includes damage to "tangible property" and Injury Group 3 includes taking of "personal property."

The Insuring Agreement of Universal Garage Coverage Part 500, as amended by Endorsement No. 162, of the Policies defines "OCCURRENCE" as follows:

> "OCCURRENCE" with respect to COVERED POLLUTION DAMAGES, INJURY Groups 1 and 2 means an accident, including continuous or repeated exposure to conditions, which results in such INJURY or COVERD POLLUTION DAMAGES during the Coverage Part period neither intended nor expected from the standpoint of a reasonably prudent person.
>
> With respect to INJURY Groups (3), (4), (5), and (6), OCCURRENCE means acts of the INSURED during the Coverage Part period which result in such INJURY.

(Fischer Decl. at ¶¶ 7-10 – Exhibits F at 0055, 0132; G at 0056, 0133; H at 0057, 0134; and I at 0058, 0135.)

On April 28, 2006, Universal sent a letter to the Insureds wherein it advised that it would provide a defense to the Insureds in the Underlying Action pursuant to Injury Group 3 identified in the Policies. (Fischer Decl. at ¶ 2 – Exhibit A at 0009.) Moreover, Universal also

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

acknowledged that the Policies provide coverage for claims based on an allegation of conversion of personal property. *Id*. Although Universal attempts to exclude "intellectual property" from "personal property," such distinction does not exist in the Policies.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is a drastic remedy and is therefore to be granted cautiously. "Neither do we suggest that the trial courts should act other than with caution in granting summary judgment." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555.

Summary judgment is not proper where contractual language is ambiguous (i.e. susceptible of at least two reasonable interpretations). *Welles v. Turner Entertainment Co.* 503 F.3d 728, 737 (9th Cir. 1981)

## IV. LEGAL ARGUMENT

### A. The Motion for Partial Summary Judgment Should be Denied Because Personal Property Includes Intangible Property Such as Customer Lists

Without question, the Policies provide coverage for the taking of personal property. Universal admits that there is coverage for the taking of personal property. "Universal is defending under Injury Group 3, based on the allegation of conversion of personal property. . ." (Fischer Decl. at ¶ 2, Exhibit A at 0009.) The Underlying Complaint alleges that Defendants took a mobile telephone belonging to Berkeley Honda and Berkeley Honda's customer list and customer information. (URJN at ¶¶ 1, 3, 4 – Exhibits A, C and D at ¶¶ 5-6 and 25.) The customer list and customer information are personal property, triggering coverage under the Policies.

Universal attempts to limit the coverage for which the Insureds paid substantial premiums by arguing that the phrase "personal property" should be read to include only tangible personal property. However, as discussed in detail below, such a narrow reading does not comport with the historic and traditional definition of personal property, other language in the Policies, or California case law.

/ / /

/ / /

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

### 1. The Ordinary Legal Meaning of "Personal Property" Includes Intangible Property Such as Customer Lists

It is Black Letter Law that personal property includes all property that is not real property. This includes intangible property.

Universal urges this Court to use a dictionary to assist in determining the meaning of the term "personal property." (Universal's Memo of Ps & As, p. 15, lines 20-21.) Defendants concur that it is appropriate for this court to turn to dictionary definitions to assist it in determining the meaning of undefined terms. *Humboldt Bank v. Gulf Insurance Co.* 323 F. Supp. 2d 1027, 1032 (N.D. Cal. 2004). Black's Law Dictionary defines "personal property" as "[a]ny movable or ***intangible*** thing that is subject to ownership and not classified as real property." Black's Law Dictionary, 7th Ed., 2000 at 988 (Nitschke Decl. at ¶ 2 - Exhibit A at 0002.) The traditional plain and ordinary meaning of "personal property" includes all property, including intangible property, which is not real property. This is the plain and ordinary meaning of the term "personal property" as it is used in the Policies.

As Universal admits, Injury Group 3 provides coverage for the taking of personal property. Universal would now have this court rewrite the Policies to add the word "tangible" before personal property in Injury Group 3 in order to limit coverage. There is no basis for rewriting the Policies to limit coverage for which the Insureds paid substantial premiums.

Coverage clauses of insurance policies are generally interpreted broadly. *Montrose Chem. Corp of Calif. V. Admiral Ins. Co.* 10 cal4th 645, 667, 42 Cal.Rptr.2d 324, 335 (1995). The plain wording of the language in Injury Group 3 does not limit the type of personal property which is covered under this provision. It simply covers all personal property. The term "tangible" is nowhere to be found in Injury Group 3. As such, the coverage provided by Injury Group 3 is not limited to tangible personal property. All personal property is covered under Injury Group 3.

Because "personal property" includes intangible property such as customer lists and customer information, there is coverage for the Underlying Complaint pursuant to Injury Group 3 of the Policies. Therefore, the motion for partial summary judgment should be denied.

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

**2. Other Policy Provisions Support the Conclusion that Injury Group 3 is Not Limited to Tangible Personal Property**

The language of a particular provision in an insurance policy should be construed in the context of the entire policy. *Foster Gardner, Inc. v. National Union Fire Ins. Co.,* 18 Cal.4th 857, 868, 77 Cal.Rptr.2d 107 (1998). Words used in a certain sense in one part of an instrument are deemed to have been used in the same sense in another. *Caminetti v. Pacific Mut. Life Ins. Co. of Calif.* 22 Cal.2d 344, 358, 139 P.2d 908, 915 (1943). Similarly, where a policy uses differing terms in other provisions, they are held to have separate meanings. This careful separation indicates that the insurer deliberately and intentionally created differing rights and obligations based on the specific terms articulated in the policy. *Foster Gardner,* 18 Cal.4th at 880.

In the Policies before this Court, the language of other provisions of the Policies clearly indicates that when Universal intended to limit coverage to "tangible" property it chose to do so. For example Injury Group 1 provides as follows:

> Group 1 – bodily injury, sickness, disease or disability (including death resulting from any of these) or damage or loss of use of ***tangible*** property[.] [Emphasis added.]

(Fischer Decl.¶ 7 – Exhibit F at 0054.)

Universal's deliberate and intentional use of the term "tangible" in the language of Injury Group 1, demonstrates that it intended to create differing rights and obligations based on the specific terms articulated in the various policy provisions. The coverage afforded by Injury Group 1 is limited to tangible property, whereas the coverage afforded by Injury Group 3 is not limited to tangible property. It is much broader and includes all personal property, including intangible property. As the California Supreme Court noted in *Foster Gardner*, where an insurance company chooses to use different terms in a policy, it indicates that the insurer deliberately and intentionally desired to create different rights and obligations based on the specific terms used. *Foster Gardner,* 18 Cal.4th at 880.

Read as a whole, the language of the Policies indicates that the coverage provided by Injury Group 3 is not limited to tangible property, but rather includes all personal property,

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

whether tangible or intangible. As such, there is coverage for the Underlying Complaint and the motion for partial summary judgment should be denied.

**3. Other Provisions of California Law Confirm that Personal Property Includes Intangible Property Such as Customer Information and Customer Lists**

In a variety of contexts, California courts have consistently followed Black Letter Law and have held that intangible property such as customer lists and customer information are personal property. These rulings have been far reaching and have touched nearly every area of the law ranging from the California Penal Code to the California Revenue & Taxation Code.

In the context of the Penal Code, courts have specifically held that intangible property, including trade secrets, constitute personal property. "In enacting [Penal Code] section 499c, the Legislature expressly declared its purpose was 'to clarify and restate existing law . . . involving trade secrets and ***to make clear that articles representing trade secrets, including the trade secrets represented thereby, constitute goods, chattels, materials and property****[.]'*" [Citation omitted.] *People v. Gopal*, 171 Cal.App.3d 524, 541, 217 Cal.Rptr 487, 497 (1985). [Emphasis in original.]

Likewise, the California Supreme Court has determined that intangible property is personal property under the California Revenue & Taxation Code. Intangible property includes ***personal property*** that is not itself intrinsically valuable, but that derives its value from what it represents or evidences. *Preston v. State Bd. of Equalization*, 25 Cal.4th 197, 209, 105 Cal.Rptr.2d 407 (2001). See also, *Navistar International Transportation Corp. v. State Bd. of Equalization*, 8 Cal.4th 868, 874, 35 Cal.Rptr.2d 651.

These comprehensive and far reaching rulings across a wide spectrum of legal matters establish that personal property includes intangible property such as the customer list and customer information at issue in the Underlying Action. As such, the claims asserted in the Underlying Complaint based on the alleged taking of the customer list and customer information are covered under Injury Group 3 of the Policies. Consequently, the motion for partial summary judgment should be denied.

**B. Any Ambiguities in the Policies Should be Interpreted in Favor of Coverage for the Insureds**

Although Defendants contend that the term "personal property" clearly includes intangible property, if this Court were to find the term to be ambiguous, the motions for partial summary judgment should still be denied.

"An insurance policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.* 5 Cal.4th 854, 867, 21 Cal.Rptr.2d 691, 699 (1993). See also, *Waller v. Truck ins. Exchange, Inc.* 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370 (1995). The uncertainty may relate to the extent or existence of coverage. *Continental Cas. Co. v. Phoenix Const. Co.* 46 Cal.2d 423, 437-438, 296 P.2d 801, 809-810 (1956). The ambiguity may appear either on the fact of the policy or in context when the provision in question is sought to be applied to a particular claim. *Rullman v. State Farm Mut. Auto, Ins. Co.* 8 Cal.App.3d 606, 609, 87 Cal.Rptr 551, 553 (1970).

A word or phrase may be ambiguous if it can be interpreted to have more than one meaning. *Gyler v. Mission Ins. Co.* 10 Cal.3d 216, 219, 110 Cal.Rptr. 139, 140 (1973). For example, the phrase "illegal act" was held to be ambiguous in a liability policy because it was susceptible to two reasonable meanings: acts violating criminal laws or acts violating any law, criminal or civil. *Safeco Ins. Co. of America v. Robert S.* 26 Cal.4th 758, 765-766, 110 Cal.Rptr.2d 844, 851-852 (2001).

As set forth above, the Black Letter Law definition of the term "personal property" includes intangible property. The best that Universal can hope for is for this Court to find the term to be ambiguous, and susceptible to more than one meaning. If this Court finds any ambiguity in the term "personal property," the language of the Policies should be interpreted in favor of the insureds. Universal contends that the term does not include intangible property such as the customer list and customer information at issue in the Underlying Action. However, as discussed above, the plain and ordinary meaning of the term, including the definition of "personal property" (which includes intangible property) set forth in Black's Law Dictionary, at the very least provides another reasonable meaning. In fact, the definition of personal property

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

to include intangible property is the only reasonable meaning of the term. It is the Black Letter Law definition of the term. It is the reasonable meaning provided for by the Policies when they are read as a whole. The Policies themselves establish that when Universal intended to limit coverage to tangible property it specifically chose to do so and used the term "tangible" as used in Injury Group 1 discussed above.

Any ambiguity in the policy should be construed against the insurer in order to protect the insureds' reasonable expectation of coverage. *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* 9 Cal.4th 27, 37, 36 Cal.Rptr.2d 100 (1994).

In the case at bar, this court should construe any ambiguity in the meaning of the term "personal property" against Universal in favor of Defendants. Universal drafted the Policies. It chose to use the term "personal property" in Injury Group 3 and the term "tangible property" in Injury Group 1. Any ambiguity which exists in the Policies regarding whether the term "personal property" includes intangible property such as customer lists and customer information should be construed in favor of the Insureds. As a result, there is coverage for the allegations in the Underlying Complaint regarding the alleged taking of the customer information and customer list. Therefore, the motion for partial summary judgment should be denied.

**C. Because Personal Property Includes the Customer Information and Customer List, Universal Has a Continuing Obligation to Defend the Underlying Complaint**

"It is firmly established that the duty to defend is broader than the obligation to indemnify." *Pardee Construction Co. v. Ins. Co. of the West* 77 Cal.App.4th 1340, 1350, 92 Cal.Rptr.2d 443 (2000). The duty to defend arises when an insurer ascertains facts that give rise to the potential for coverage. *Id.* "The duty to defend is a continuing one, arising upon tender and lasting until the underlying litigation is resolved or until the insurer has established there is ***no potential*** for coverage." *Id.* [Emphasis added.]

"When a suit against an insured alleges a claim that potentially or even possibly could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate, by reference to undisputed facts, that the claim ***cannot*** be covered."

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

*Borg v. Transamerica Ins. Co.*, 47 Cal.App.4th 448, 455, 54 Cal.Rptr.2d 811 (1996). If there is any doubt as to whether the duty to defend exists, that doubt must be resolved in favor of the insured and against the insurer. *Maryland Casualty Co. v. National American Ins. Co.* 48 Cal.App.4th 1822, 1831, 56 Cal.Rptr.2d 498 (1996).

Nearly two years ago, Universal acknowledged that the Policies provide coverage for the allegation of taking of personal property. (Fischer Decl. at ¶ 2, Exhibit A at 0009.) As a result, Universal acknowledged that it had a duty to defend the Insureds in the Underlying Complaint. The only real issue is whether the customer information and customer list allegedly taken by Defendants is "personal property." As discussed above, there is no question that the customer information and customer list is "personal property."

The allegations of the Underlying Complaint regarding the alleged taking of the customer list and customer information establish the potential for coverage. Universal has admitted that the taking of personal property is covered, and the facts and law establish that the customer list and customer information is personal property. Therefore, Universal has a duty to defend its Insureds in the Underlying Action until it has established there is no potential for coverage and that the claim ***cannot*** be covered. Consequently, Universal must continue to provide a defense for the allegations regarding the alleged taking of the customer information and customer list.

**D. A Determination of Universal's Indemnity Obligation is Premature Because The Insureds' Liability Has Not Yet Been Established**

The duty to indemnify arises only when the insured's underlying liability is established. *Pardee Construction Co., supra*, 77 Cal.App.4th at 1350.

In the case at bar, the Insureds' liability has not yet been established. The Underlying Action is still ongoing and has not yet been resolved. Therefore, the issue of Universal's indemnity obligation is not yet ripe. Universal's entire argument that it has no indemnity obligation for the alleged taking of the customer list and customer information is premised on its argument that it also has no duty to defend any claims arising from the alleged taking of the customer information. However, as set forth above, Universal has a continuing obligation to defend the Insureds because the customer information and customer list are personal property

within Injury Group 3. In light of this fact, a determination of its indemnity obligations is premature. Hence, the motion for partial summary judgment on Universal's First Claim for Relief (No Indemnity Obligation) should be denied.

**E. The Insureds Are Entitled to Independent Counsel**

An insurer must provide its insured with independent counsel "where an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim." Cal. Civ. Code § 2860(b).

In the present case, Universal's entire argument that it is not required to provide independent counsel is premised on its claim that the customer information and customer list is not personal property. Again, as set forth in great detail above, the customer information and customer list is personal property and covered under Injury Group 3 of the Policies. Based on the fact that the customer information and customer list is personal property covered under Injury Group 3, Universal's sole argument that it has no obligation to provide independent counsel is extinguished. Therefore, the motion for partial summary judgment as to its Third Claim for Relief (No Obligation to Provide Independent Counsel) should be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

## V. CONCLUSION

The facts and law set forth above clearly establish that "personal property" includes intangible property such as the customer list and customer information at issue in the Underlying Action. As such, by Universal's own admission, these claims are covered under Injury Group 3 of the Policies. Based on this fact, Universal's motion for partial summary judgment should be denied in its entirety.

Respectfully submitted,

Dated: April 4, 2008

NITSCHKE & VARRICCHIO LLP
PETER D. NITSCHKE

By: s/Peter D. Nitschke
Peter D. Nitschke
Attorneys for Defendants
WALNUT CREEK ASSOCIATES 5, INC. DBA OAKLAND ACURA, PROFORMANCE ASSOCIATES, INC., JAMES NIELSEN, WALNUT CREEK ASOCIATES 2, INC., WALNUT CREEK ASSOCIATES, INC. DBA WALNUT CREEK ACURA, PHILIP PETERSON and GORDON WALTON

NITSCHKE & VARRICCHIO LLP
23861 El Toro Road
Suite 700
Lake Forest, CA 92630

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 23861 El Toro Road, Suite 700, Lake Forest, California 92630

On **April 4, 2008,** I caused to be served the foregoing documents described as **DEFENDANTS WALNUT CREEK ASSOCIATES 5, INC. DBA OAKLAND ACURA, PROFORMANCE ASSOCIATES, INC., JAMES NIELSEN, WALNUT CREEK ASSOCIATES 2, INC., WALNUT CREEK ASSOCIATES, INC DBA WALNUT CREEK ACURA, PHILIP PETERSON AND GORDON WALTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO UNIVERSAL UNDERWRITERS' MOTION FOR PARTIAL SUMMARY JUDGMENT** on the interested parties as follows:

Max H. Stern, Esq.
William S. Berman, Esq.
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105
Telephone: (415) 957-3000
Facsimile: (415) 957-3001

[ ] **(BY MAIL) -** By placing [ ] the original [X] a true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona. I deposited such envelope in the mail at Lake Forest, California, with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **(BY PERSONAL DELIVERY) -** By retaining a delivery service, OneLegal, and instructing them to deliver [ ] the original [x] a true copy thereof to the above-named counsel of record and or parties in propria persona.

[X] **(BY E-FILING) -** By transmitting this document via the E-Filing System for the District Court for the Northern District of California.

Executed on April 4, 2008 at Lake Forest, California

_s/Lee Berry_______________________________
Lee Berry