1  MAX H. STERN (SBN 154424)
   WILLIAM S. BERMAN (SBN 170857)
2  **DUANE MORRIS LLP**
   One Market, Spear Tower, Suite 2000
3  San Francisco, CA 94105-1104
   Telephone: 415.957.3000
4  Facsimile: 415.957.3001
   E-Mail:    MHStern@duanemorris.com
5             WSBerman@duanemorris.com

6  Attorneys for Plaintiff
   UNIVERSAL UNDERWRITERS INSURANCE
7  COMPANY, a Kansas corporation

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 UNIVERSAL UNDERWRITERS INSURANCE          Case No.: C-07-2858 SC
   COMPANY, a Kansas corporation,
12                                           **REPLY BRIEF IN SUPPORT OF**
                  Plaintiff,                 **UNIVERSAL UNDERWRITERS**
13                                           **INSURANCE COMPANY'S MOTION**
          v.                                 **FOR PARTIAL SUMMARY**
14                                           **JUDGMENT**
   WALNUT CREEK ASSOCIATES 5, INC. dba
15 OAKLAND ACURA, a California corporation;   Date:   April 25, 2008
   PROFORMANCE ASSOCIATES, INC., a           Time:   10:00 a.m.
16 California corporation; and JAMES NIELSEN, an   Dept:   Courtroom 1, 17th Floor
   individual, WALNUT CREEK ASSOCIATES 2,
17 INC., a California corporation; WALNUT CREEK   Judge:   The Honorable Samuel Conti
   ASSOCIATES 2, INC. dba Walnut Creek Honda, a
18 California corporation, Phillip Peterson, an
   individual, GORDON WALTON, an individual,
19
                  Defendants.
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL ARGUMENT ........................................................................................ 1

    A.    Read In The Context Of The Other Covered Offenses, "Invasion Of The Right To Possession Of Personal Property" Cannot Reasonably Include All Copying And Misuse Of Intellectual Property ................ 1

        1.    California Law Does Not Permit An Interpretation That Would Render Other Listed Coverages Mere Surplusage ..................................... 1

        2.    Defendants' Proffered Interpretation Impermissibly Would Render Group 4 Coverages Mere Surplusage ............................................ 5

    B.    There Is No Basis To Construe A Term That Is Unambiguous In Context Against Universal ................................................................................................ 7

    C.    Universal Is Not Obligated To Provide Independent Counsel ............................... 8

    D.    Universal's Motion Should Not Be Denied Merely Because The Defense Is Continuing ....................................................................................... 9

III.  CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

*ACL Technologies v. Northbrook Property & Casualty Insurance Co.,*
17 Cal. App. 4th 1773, 22 Cal. Rptr. 2d 206 (4th Dist. Div. 3 1993)............................4

*Ayers v. The Prudential Insurance Company of America,*
602 F.2d 1309 (9th Cir. 1979) ......................................................................................5

*Bank of the West v. Superior Court,*
2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538 (1992) ..........................................................3, 6-8

*Blanchard v. State Farm Fire & Casualty Co.,*
2 Cal. App. 4th 345, 2 Cal. Rptr. 2d 884 (Ct.App. 2nd Dist. Div. 5 1991)...................8

*Buss v. Superior Court,*
16 Cal. 4th 35, 65 Cal. Rptr. 2d 366 (1997) ................................................................9

*Cook v. Penn Mutual Life Insurance Co.,*
218 Cal. App. 2d 194, 32 Cal. Rptr. 400 (1963) .........................................................2

*Crane v. State Farm Fire & Casualty Co.,*
5 Cal. 3d 112, 95 Cal. Rptr. 513 (1971) ......................................................................5

*Dynamic Concepts, Inc. v. Truck Insurance Exch.,*
61 Cal. App. 4th 999, 71 Cal. Rptr. 2d 882 (Ct.App.4th Dist. Div. 3 1998)................9

*Farmers Insurance Exch. v. Knopp,*
50 Cal. App. 4th 1415, 58 Cal. Rptr. 2d 331(1996) ....................................................4

*Foster Gardner, Inc. v. National Union Fire Insurance Co.,*
18 Cal. 4th 857, 77 Cal.Rptr.2d 107 (1998) .............................................................7, 8

*Mid-Century Ins. Co. v. Bash,*
(1989) 211 Cal. App. 3d 431 [259 Cal.Rptr. 382]........................................................4

*Nationwide Mutual Insurance Co. v. Dynasty Solar, Inc.,*
753 F. Supp. 853 (N.D. Cal. 1990).....................................................................2, 3, 5, 6

*Palmer v. Truck Insurance Exch.,*
21 Cal. 4th 1109, 90 Cal. Rptr. 2d 647 (1999) ........................................................3, 6, 7

*People v. McKale,*
25 Cal. 3d 626, 159 Cal. Rptr. 811, 602 P.2d 731 (1979) ............................................3

*Producers Dairy Delivery Co. v. Sentry Insurance Co.,*
41 Cal. 3d 903, 226 Cal. Rptr. 558 (1986) ...............................................................2, 7

*Southern Ins. Co. v. Domino of California, Inc.*
(1985) 173 Cal. App. 3d 619 [219 Cal.Rptr. 112]........................................................4

*Stein v. International Ins. Co.*
(1990) 217 Cal. App. 3d 609 [266 Cal.Rptr. 72].........................................................4

*Titan Corp. v. Aetna Casualty and Surety Co.,*
    22 Cal. App. 4th 457, 27 Cal. Rptr. 2d 476 (Ct.App. 4th Dist. Div. 1 1994)............4, 6

*Trans America Insurance Co. v. Sayble*, 193 Cal. App. 3d 1562 (1987) .............................2

*Union Oil Co. v. International Insurance Co.,*
    37 Cal. App. 4th 930, 44 Cal. Rptr. 2d 4 (Ct.App. 1st Dist. Div. 3 1995) ...................4

## STATUTES

Cal. Bus. & Prof. Code § 17200 ..................................................................................3
Cal. Civ. Code § 1641 ...................................................................................2, 4, 6, 8
Cal. Civ. Code § 1654 ..........................................................................................8
Cal. Civ. Code § 2860 ..........................................................................................9
Cal. Civ. Code § 2860(b)....................................................................................1, 9

REPLY BRIEF IN SUPPORT OF UNIVERSAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.    INTRODUCTION

Defendants' Opposition to Universal's motion crystallizes the dispute between the parties to a single contention by Defendants:  their contention that the "legal meaning" of "personal property" includes intellectual property so that the Injury Group 3 covered offense of "invasion of the right of possession of personal property" either plainly extends to copying another's customers list or is ambiguous and so should be construed against Universal.  This contention, however, has a basic flaw pointed out in Universal's moving brief – to read this offense to extend to liability for copying and misusing intellectual property would make most or all of the policy's subsequent enumeration of intellectual property offenses in Injury Group 4 unnecessary and mere surplusage.  That is not permissible under California rules of contract interpretation, as has been explained by this Court, the Ninth Circuit, and both California's Supreme Court and its Courts of Appeal.  Defendants' proffered interpretation is thus not reasonable in context and does not create an ambiguity.  This Court should apply the common dictionary definition of "personal property" as meaning tangible property other than real property, with the result that there is no potential of coverage under the policy for copying a customer list, and thus this Court should grant partial summary judgment in favor of Universal on its first two claims for relief.

In addition, this Court should grant partial summary judgment to Universal on its third claim for relief because, under Civil Code section 2860(b), Universal's coverage position does not obligate it to provide independent counsel to Defendants.  The Opposition does not address the clear statutory wording providing that Universal's denial (as opposed to a mere reservation of rights) as to certain alleged facts (all allegations other than taking the cell phone) does not create a conflict invoking the right to independent counsel.

## II.    LEGAL ARGUMENT

### A.    Read In The Context Of The Other Covered Offenses, "Invasion Of The Right To Possession Of Personal Property" Cannot Reasonably Include All Copying And Misuse Of Intellectual Property

#### 1.    California Law Does Not Permit An Interpretation That Would Render Other Listed Coverages Mere Surplusage

This case is not the first time a court applying California law has faced the argument that an

1  insurance policy term has two meanings: when courts are faced with more than one construction of

2  a policy term or provision, such courts do not automatically find an ambiguity exists. Instead, courts

3  consider the suggested constructions in the context of the entire policy. When only one construction

4  gives effect to all others policy provisions without rendering any provision surplusage, that

5  construction is adopted, and all other constructions are rejected as unreasonable.

6      This Court, in *Nationwide Mutual Ins. Co. v. Dynasty Solar, Inc.*, 753 F.Supp. 853, 857

7  (N.D. Cal. 1990) ("*Dynasty Solar*"), faced a dispute very similar to the one presented now. The

8  insured argued that "unfair competition" – one of a list of covered offenses – should be read broadly

9  to extend to all sorts of improper business practices, citing statute and a dictionary definition.

10  *Dynasty Solar*, 753 F.Supp. at 85-6. The insurer argued that the phrase should be applied only to the

11  common law tort law of the same name, because adopting the insured's argument would have the

12  single enumerated offense of "unfair competition" render the list of other enumerated covered

13  offenses unnecessary and meaningless. *Id.* at 857. This Court agreed with the insurer, pointing out

14  the flaw in the insured's argument as follows:

> The court finds that Dynasty's argument, though not without a certain syllogistic attractiveness, fails because it neglects to adhere to other elementary principles of contract construction. Dynasty makes no effort to corroborate its construction of unfair competition by reference to the surrounding language in the Nationwide policies. Rather, it analyzes the terms almost entirely in isolation. In so doing Dynasty runs afoul of the obligation to read the disputed terms in the context in which they appear. "Language in a contract must be construed in the context of that instrument as a whole and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d at 916 n. 7, 226 Cal.Rptr. 558, 718 P.2d 920; *see also Trans America Ins. Co. v. Sayble*, 193 Cal.App.3d 1562, 1566 (1987) ("A contract must be construed as a whole without giving a distorted emphasis to isolated words and phrases."); *Cook v. Penn Mutual Life Ins. Co.*, 218 Cal.App.2d 194, 197-198, 32 Cal.Rptr. 400 (1963) ("While a policy term may appear ambiguous if viewed in isolation, there is no ambiguity if its meaning can be determined by fair inference from the policy terms."); Cal. Civ. Code § 1641.

25  *Id.* at 856-857.

26      Furthermore, this Court found in *Dynasty Solar* that it was not permissible to read one

27  covered offense so broadly as to make the listing of other covered offenses unnecessary:

28  ///

1
2
3
4
5
6
7
8

Finally, the court is further persuaded by Nationwide's contention that adoption of the statutory definition of unfair competition would render meaningless the enumerated companion torts. Dynasty admits that Cal. Bus. & Prof. Code § 17200 broadly defines unfair competition. In fact, that statute's prohibition against "unlawful, unfair or fraudulent business practice" has been held to apply to "anything that properly can be called a business practice and that at the same time is forbidden by law." *People v. McKale*, 25 Cal.3d 626, 632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979). Piracy, infringement, idea misappropriation and the remaining torts almost surely would be surplusage, then, were the far reaching California statutory definition of unfair competition to apply. For the court to so construe the insurance contract it would have to abandon its responsibility, outlined in detail above, to give effect to each part of the instrument.

9   *Id.* at 857.

10    Shortly thereafter, the California Supreme Court decided that same coverage issue and came

11   to same result as this Court. *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1265, 10

12   Cal.Rptr.2d 538 (1992) (citing *Dynasty Solar* with approval). The California Supreme Court

13   rejected the insured's proffered definition, although it certainly was a reasonable definition in

14   isolation, because the insured's construction was unreasonable based on the surrounding policy

15   wording. *Bank of the West,* 2 Cal.4th at 1265. In addressing the insured's argument, the court

16   observed: "While the foregoing argument is probably correct as a matter of abstract philology, it is

17   defective as a matter of policy interpretation because it disregards the context." *Bank of the West,* 2

18   Cal.4th at 1265.

19    The California Supreme Court later revisited this topic of how to construe covered offenses

20   that could have multiple definitions, in *Palmer v. Truck Ins. Exch.,* 21 Cal.4th 1109, 90 Cal.Rptr.2d

21   647 (1999). In *Palmer,* the issue was whether coverage for the offense of infringement "of title"

22   could be read to extend to infringement of a registered mark, or instead only applied to misusing the

23   name of a literary or artistic work. 21 Cal.4th at 1116. While acknowledging that the word "title"

24   had multiple meanings, the California Supreme Court held that only the latter was reasonable in the

25   context of other policy provisions, including a trademark exclusion that excepted infringement of

26   title and a separate covered offense for infringement of copyright, because only the narrow

27   interpretation would "give effect" to both the exclusion and the separate statement of the copyright

28   offense coverage. *Id.* at 1118 & n.8.

1  This analysis – rejecting attempts to broaden one coverage that would swallow other

2  designated coverages as violating the California Civil Code section 1641 requirement to "give

3  effect" to all clauses – is also evident in other California appellate decisions. See, e.g., *Union Oil*

4  *Co. v. International Ins. Co.,* 37 Cal.App.4th 930, 940, 44 Cal.Rptr.2d 4 (Ct.App. 1st Dist. Div. 3

5  1995); *Titan Corp. v. Aetna Cas. and Sur. Co.,* 22 Cal.App.4th 457, 474, 27 Cal.Rptr.2d 476

6  (Ct.App. 4th Dist. Div. 1 1994). In both *Union Oil* and *Titan*, California's appellate courts rejected

7  the argument that the standard coverage for "personal injury" should be read broadly to apply to

8  liability for pollution of property in order to avoid the pollution exclusion that applied to the

9  "property damage" coverage. Although the argument for "personal injury" coverage was technically

10  logical in isolation, the courts found the broad interpretation unreasonable in the context of a policy

11  that also covered "property damage," but did so subject to an exclusion that would be meaningless if

12  coverage for "personal injury" could duplicate the coverage for "property damage." See *Union Oil*,

13  37 Cal.App.4th 930, 938-939, *Titan*, 22 Cal.App.4th at 473-475.

14  This theme of rejecting broad definitions of terms that would make some other part of the

15  policy redundant is rooted in Civil Code section 1641 (enacted 1871), and its application is well-

16  established in California insurance law. As the Court of Appeal in *ACL Technologies v. Northbrook*

17  *Property & Casualty Insurance Co.,* 17 Cal.App.4th 1773, 1778, 22 Cal.Rptr.2d 206 (4th Dist. Div. 3

18  1993), rev. den. ("*ACL Technologies*") recounted:

19  > In California, however, contracts --even insurance contracts--are
>    construed to avoid rendering terms surplusage. (E.g., *AIU, supra,* 51

20  > Cal.3d at p. 827 [declining to apply a definition of "damages" which
>    would render "redundant" the phrase "legally obligated to pay"]; *Shell*

21  > *Oil, supra,* 12 Cal.App.4th at p. 753 ["The way we define words
>    should not produce redundancy . . .."]; *Stein v. International Ins. Co.*

22  > (1990) 217 Cal.App.3d 609, 613-614 [266 Cal.Rptr. 72]
>    [distinguishing between "claims" and "suits" to avoid redundancy];

23  > *Mid-Century Ins. Co. v. Bash* (1989) 211 Cal.App.3d 431, 438 [259
>    Cal.Rptr. 382] ["To interpret the policy provision as respondent does

24  > would render the words 'financial responsibility' mere surplusage."];
>    *Southern Ins. Co. v. Domino of California, Inc.* (1985) 173 Cal.App.3d

25  > 619, 624 [219 Cal.Rptr. 112] [rejecting policyholder interpretation that
>    would render words "of property" redundant].)

26

27  17 Cal.App.4th at 1785-6. See also *Farmers Insurance Exch. v. Knopp,* 50 Cal.App.4th 1415, 1421,

28  58 Cal.Rptr.2d 331 (4th Dist. Div. 1, 1996) (giving different meanings to "use" and "used" in the

1    same sentence in a way that excluded coverage, in order to give meaning to both words).

2    The Ninth Circuit likewise has refused to find an ambiguity based merely on the existence of

3    two proffered constructions of a policy term, even though each was reasonable in isolation. For

4    instance, in *Ayers v. The Prudential Insurance Company of America*, 602 F.2d 1309 (9th Cir. 1979),

5    the Ninth Circuit found an exclusion was unambiguous and rejected each of the proposed

6    constructions of the term "employee" that would have deprived the exclusion of having a meaningful

7    effect. *Ayers*, 602 F.2d at 1314-1315 ("To render language nugatory is unreasonable as a matter of

8    law.").

9    **2.    Defendants' Proffered Interpretation Impermissibly Would Render
         Group 4 Coverages Mere Surplusage**

10

11    Here, Defendants do not dispute that Merriam-Webster's dictionary defines "personal

12    property" as tangible moveable or immoveable property other than real property and fixtures.

13    Defendants offer a second, broader definition from the leading legal dictionary and from criminal

14    and tax cases.[1] Defendants describe their definition that extends to intellectual property as the

15    "Ordinary *Legal Meaning* of 'Personal Property'." (Opposition at 8, line 1 [emphasis added].)

16    However, under California law, the policy must be interpreted "as a lay[person] would read it and

17    not as it might be analyzed by an attorney or insurance expert." *Crane v. State Farm Fire & Cas.*

18    *Co.*, 5 Cal.3d 112, 115, 95 Cal.Rptr. 513 (1971). As a result, Universal is entitled to summary

19    judgment on this coverage dispute, because it has met its burden of demonstrating that the ordinary

20    meaning of personal property does not include intellectual property, and Defendants' argument for

21    coverage is premised on what is an admittedly legalistic alternative meaning.

22    However, even if Defendants had argued and proved the existence of an alternative ordinary

23    meaning, Universal still is entitled to summary judgment on its first two claims, because such an

24    alternative definition would leave some or all of the Group 4 coverages without independent

25    meaning. Under the holdings of this Court in *Dynasty Solar*, and other California courts such as

26

---

27    [1] Universal does not agree that these cases in fact support Defendants' argument, but Universal's
     moving brief acknowledges that alternative legal definitions exist for the phrase. (Moving Brief at

28    p.16.)

1  *Bank of the West*, *Palmer, Union Oil,* and *Titan*, and under the mandate of Civil Code section 1641,

2  Defendants' contention should be rejected.

3  Injury Group 4, provide coverage for seven specific intellectual property offenses:

4  "plagiarism, misappropriation of advertising ideas or style, infringement of copyright, title, slogan or

5  trademark." Each of these Group 4 offenses involves the use of another's intangible intellectual

6  property in violation of the owner's rights. If Defendants were correct that the offense of "invasion

7  of the right of possession of personal property" includes not only taking tangible personal property,

8  but also copying and misusing their intellectual property such as a customer list, there would be no

9  need for any of the intellectual property offenses stated in Injury Group 4. Any plagiarism,

10  misappropriation of advertising ideas or style, or infringement of copyright, title, slogan or

11  trademark would also be an invasion of personal property rights subsumed within Injury Group 3.

12  Defendants appear resigned to the fact that this surplusage – which was identified by

13  Universal in its moving brief at pages 17-18 – will exist with their construction, and yet they do not

14  make any attempt to explain how that consequence would be acceptable under the governing

15  California insurance law interpretation principles and authorities cited by Universal. Under the

16  litany of California law discussed above, Defendants' concession of this "surplusage" effect is fatal

17  to their claim for coverage. Just as the broad definition of "unfair competition" that would swallow

18  the other enumerated offenses was rejected in *Dynasty Solar*, just as the broad definition of "title"

19  that would swallow the offense of copyright was rejected in *Palmer*, and just as the broad

20  construction of "personal injury" that would duplicate "property damage" was rejected in *Titan*, so

21  too should this Court reject a definition of "personal property" as used in Group 3 that would

22  swallow and leave without meaning any or all of the Group 4 covered intellectual property offenses.

23  Rather than confront this defect, Defendants attempt to argue there is context supporting a

24  broad definition, in the use of the phrase "tangible property" in Injury that allegedly reveals an intent

25  for Group 1 to narrowly apply to only tangible personal property while Injury Group 3 applies to "all

26  personal property, including tangible property." (Opposition to p. 9.) However, this is a clear

27  misreading of the scope of Group 1 property damage coverage, which is broader, not narrower, than

28  the scope of the invasion of rights of possession coverage at Group 3 for personal property. After

1  all, Group 1 applies to both real property and personal property, not just the latter. Given that Group

2  1 without the "tangible" restriction would expand to apply to all property, including intellectual

3  property, there was an absolute need for that restrictive word to be used for Group 1 in order to

4  restrict the coverage to real property and personal property. However, because the ordinary, lay

5  dictionary definition of "personal property" already incorporates the concept of "tangible property,"

6  the additional restriction would be superfluous. The context of Group 1 does not support

7  Defendants' argument; rather such context is entirely consistent with Universal's proffered

8  interpretation.

9      In sum, the only objective, reasonable interpretation of the scope of the offense "invasion of

10  the right of possession of personal property" is that it relates to acts that prevent the possession of

11  tangible personal property. Because customer information constitutes an intangible intellectual

12  property interest (as opposed to real property or personal property), the taking and use of that

13  information does not fall with the scope of the Injury Group 3 offense of "invasion of the right of

14  possession of personal property."

**B.    There Is No Basis To Construe A Term That Is Unambiguous In Context Against Universal**

17      The Defendants cannot create an ambiguity here by reliance on the rule of construction that

18  contracts may be construed against the drafter. See *Palmer v. Truck Insurance Exchange*, 21 Cal.

19  4th at 1118. In *Palmer*, the California Supreme Court observed that the rule of construction that all

20  ambiguities are to be construed against the insurer did not change the court's conclusion that the

21  term "title" was unambiguous in context despite having multiple meanings in the abstract:

> The rule requiring the court to construe all ambiguities against the insurer does not change our conclusion. The mere fact that a word or phrase in a policy may have multiple meanings does not create an ambiguity. (See *Foster-Gardner, supra,* 18 Cal. 4th at p. 868, 77 Cal. Rptr. 2d 107, 959 P.2d 265.) "'Language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.'" *Bank of the West, supra,* 2 Cal. 4th at p. 1265, italics omitted, quoting *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal. 3d 903, 916, fn. 7, 226 Cal. Rptr. 558 (1986). Where, as here, the meaning of the policy term is clear from the context of the policy as a whole, no ambiguity exists. See *AIU Ins., supra,* 51 Cal. 3d at p. 828 [refusing to adopt a broad definition of "damages" that would render a

1  phrase in the policy meaningless].

2  *Id.*

3  First, this rule only applies in cases of ambiguity, and this policy language is not ambiguous,

4  because there are not two objectively reasonable lay interpretations. Second, this so-called rule of

5  contra proferentem ("against the one who proffers") is found in Civil Code section 1654, which

6  provides: "*In cases of uncertainty not removed by the preceding rules*, the language of a contract

7  should be interpreted most strongly against the party who caused the uncertainty to exist."

8  (Emphasis added.) As Section 1654 states, this is a rule of last resort, which is used only where a

9  dispute is not resolved by the prior rules of contract interpretation. Even if the policy wording were

10 ambiguous (which it is not), the rule of contra proferentem would never be reached here, because the

11 Defendants' contention as to the scope of Group 3 coverage is defeated by the prior rule of

12 construction stated in Civil Code section 1641, which requires that each term in the contracts must

13 be given meaning. See, e.g., *Bank of the West,* 2 Cal. 4th at 1264-1265 (rejecting an insured's effort

14 to apply contra proferentem "too early in the interpretive process").

15 Defendants' argument that an ambiguity exist and therefore the court should resolve the

16 dispute in their favor ignores a fundamental tenet of insurance contract interpretation – "[a] policy

17 provision will be considered ambiguous when it is capable of two or more constructions, both of

18 which are reasonable." *Foster Gardner, Inc. v. National Union Fire Ins. Co.,* 18 Cal.4th 857, 868,

19 77 Cal.Rptr.2d 107 (1998). Given that there is only one reasonable construction of "personal

20 property" that gives effect to enumeration of the Group 4 offenses, Defendants are not entitled to a

21 construction in their favor.

22 **C.    Universal Is Not Obligated To Provide Independent Counsel**

23 Universal is entitled to a declaration that it is not required to provide independent counsel to

24 the Defendants, because Defendants have not raised a triable issue of material fact as to this issue.

25 Universal has unconditionally acknowledged coverage exists for the alleged taking of the cellular

26 phone and denied coverage for the remaining allegations, including the taking of the intangible

27 property – the customer information. Because Universal did not reserve its rights with respect to the

28 taking of the cellular phone and otherwise denied coverage for the remainder of the claim, Universal

1    is not obligated to provide its insured with independent counsel. See *Blanchard v. State Farm Fire &*

2    *Casualty Co.,* 2 Cal.App.4th 345, 350, 2 Cal.Rptr.2d 884 (Ct.App. 2nd Dist. Div. 5 1991); *Dynamic*

3    *Concepts, Inc. v. Truck Insurance Exch.,* 61 Cal.App.4th 999, 1006, 71 Cal.Rptr.2d 882 (Ct.App.4th

4    Dist. Div. 3 1998).

5         As set forth in the first sentence of section 2860(b) of the California Civil Code – which

6    sentence the Defendants failed to address in their brief and excluded from the excerpt of Section

7    2860(b) quoted on page 14 of their Opposition – the governing statute specifically provides that no

8    conflict of interest exists between an insured and its insurer as to allegations or facts in litigation for

9    which the insurer has denied coverage:

10        (b)    **For purposes of this section, a conflict of interest does not
         exist as to allegations or facts in the litigation for which the insurer
11        denies coverage;** however, when an insurer reserves its rights on a
         given issue and the outcome of that coverage issue can be controlled
12        by counsel first retained by the insurer for the defense of the claim, a
         conflict of interest may exist.  No conflict of interest shall be deemed
13        to exist as to allegations of punitive damages or be deemed to exist
         solely because an insured is sued for an amount in excess of the
14        insurance policy limits.

15   Cal. Civ. Code §2860(b).

16        While Defendants mischaracterize Universal's position, Defendants do not dispute the

17   material fact that Universal has denied coverage for certain allegation or facts asserted against them

18   in the Berkeley Honda Action, while agreeing to provide coverage only for the alleged taking of the

19   cellular phone.  Universal thus is entitled to a declaration consistent with California Civil Code

20   section 2860 that it was not and is not obligated to provide Defendants with independent counsel.

21        **D.    Universal's Motion Should Not Be Denied Merely Because The Defense Is
              Continuing**

22

23        Sections IV.C. and IV.D. of the Opposition argue that Universal's motion should be denied

24   because Universal has agreed to defend the cell phone conversion allegations, and thus the entire

25   action, making partial defense and indemnity decisions unnecessary.

26        However, the fact Universal has done the right thing in defending the entire action in the first

27   place does not mean that the legal issues of Universal's duty to defend and indemnify the claims

28   other than as to the cell phone, and the customer list claims in particular, are moot.  Under *Buss v.*

*Superior Court*, 16 Cal.4th 35, 48-50, 65 Cal.Rptr.2d 366 (1997), Universal has a prophylactic duty to defend the entire action, but it is entitled to recover defense expenses allocable to claims for which it had no duty to defend. Thus, whether Universal has shown that these claims do not trigger a duty to defend is a key legal issue in this action that can and should be decided on summary judgment.

Moreover, while Universal agrees that any duty to indemnify could not arise until the underlying action concludes, that does not mean indemnity issues that are questions of law must or should wait until then for determination. Nearly every one of the cases cited in this brief that find no duty to defend also find there was no duty to indemnify. It is obvious from the underlying allegations that the customer list issues are central, and there would be no litigation if the cell phone conversion were the only claim. A determination by the Court at this time on the issue of law presented will provide the parties important direction as to their rights and obligations with respect to the underlying action.

## III.    CONCLUSION

Universal is entitled to partial summary judgment as a matter of law on Claims One, Two and Three of its Complaint. Universal is entitled to declarations that it has no defense and indemnity obligations with respect to the claims relating to the alleged taking and use of Berkeley Honda's intellectual property under the Policy under Injury Group 3. In addition, because Universal has not reserved the right to later decide coverage with respect to any claim alleged in the *Berkeley Honda Action*, Universal also is entitled to a declaration that Defendants (except for Mr. Nielsen) were not and are not entitled to independent counsel paid by Universal.

Respectfully submitted,

Dated: April 11, 2008          **DUANE MORRIS** LLP

By: _____
Max H. Stern
William S. Berman
Attorneys for Plaintiff
Universal Underwriters Insurance Company

DM1\1319355

*Universal Underwriters Ins. Co. v. Oakland Acura, et al.*
*United States District Court, No.: C 07 2858 SC*

### PROOF OF SERVICE

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to this lawsuit. My business address is Duane Morris LLP, One Market Plaza, Spear Tower, Suite 2000, San Francisco, California 94105. On the date listed below, I served the following document:

**REPLY BRIEF IN SUPPORT OF UNIVERSAL UNDERWRITERS INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

See attached list on designated recipients through https://ecf.cand.uscourts.gov.

☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY FACSIMILE:** I served said document(s) to be transmitted by facsimile at approximately _____ a.m./p.m. pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was (415) 955-2599. The name(s) and facsimile machine telephone number(s) of the person(s) served is listed in the attached service list marked with a ^^^. A transmission report was properly issued by the sending facsimile machine, and the transmission was reported as complete and without error.

☒ **BY ELECTRONIC SERVICE:** I served a true copy electronically on designated recipients through https://ecf.cand.uscourts.gov. Upon completion of electronic transmission of said document(s), a receipt is issued to serving party acknowledging receipt by this system.

Executed on April 11, 2008, at San Francisco, California.

JoAnna Soliman